STATE v. THOMAS B. SCOTT.

December 12, 1899.

Nos. 11,860—(16).

### Perjury—False Affidavit—Indictment.

An indictment for perjury, in making a false affidavit, charges that the accused "did wrongfully, unlawfully, knowingly, wilfully, falsely, corruptly, and feloniously swear and make oath" before a notary public that the affidavit (subscribed by him, and set out in the indictment) is true. *Held*, the indictment sufficiently charges that the accused was sworn to the affidavit.

### Financial Report.

The affidavit purported to verify the truth of a statement which was referred to as the "foregoing statement * * * hereunto annexed, and by him [the affiant] subscribed." *Held*, the statement attached to and preceding the affidavit was thereby sufficiently identified, though not so subscribed.

### Falsity of Parts.

*Held*, it is sufficiently charged that certain specified parts of the statement are false.

### Indictment under Laws 1895, c. 175, § 104.

*Held*, the indictment (which was drawn under Laws 1895, c. 175, § 104) does not charge two offenses.

Defendant was indicted in the district court for Ramsey county for perjury, and demurred to the indictment. The court, O. B. Lewis, J., overruled the demurrer, and certified the case to the supreme court for its determination of the following points: (1) Whether the indictment conformed to G. S. 1866, c. 108, §§ 1, 2, 3, and 4, as qualified by section 10. (2) Whether the indictment charged more than one offense. (3) Whether the facts stated in the indictment constitute a public offense.   Affirmed.

*Munn & Thygeson,* for appellant.

The indictment does not allege that any oath on which perjury can be predicated was administered. There is no identified statement to which such alleged oath relates on which perjury can be predicated. What defendant did should be set forth. An oath, and the form of oath required by the statute, must have been administered; and the indictment must recite that the oath was administered. People v. Dunlap, 113 Cal. 72; U. S. v. McConaughy, 33 Fed. 168; State v. Divoll, 44 N. H. 140. The form of oath required by the statute must be substantially followed. See cases supra; Ashburn v. State, 15 Ga. 246; Bawcom v. State, 41 Tex. 189; Sutton v. State, 41 Tex. 513; Gorman v. State, 42 Tex. 221.

*W. B. Douglas,* Attorney General, *Horace E. Bigelow,* and *F. W. Zollman,* for the State.

CANTY, J.

The grand jury of Ramsey county returned an indictment against the defendant charging him with the crime of perjury. He demurred to the indictment. The court overruled the demurrer, and certified the case to this court.

The indictment charges that on February 3, 1897, the defendant was president of the Life Insurance Clearing Company, a corporation organized under the laws of this state, and doing a life insurance business; that on that day he made oath to the return to the insurance commissioner, such return being the annual statement of the condition, business, and affairs of said company, for the year ending December 31, 1896; and that certain specified portions of this statement are false.

Laws 1895, c. 175, § 74, provides:

"Every insurance company doing business in this state must transmit to the insurance commissioner a statement of its condition and business for the year ending on the 31st day of December."

The section then provides for publishing the statement, and further provides:

"Statements for publication shall be made out on blanks furnished by the insurance commissioner, and under his direction."

Section 104 provides:

"For wilfully making a false annual or other statement it is required by law to make, an insurance company and the persons making oath to or subscribing the same shall severally be punished by a fine of not less than one hundred nor more than five thousand dollars. Any person making oath to such false statement shall be deemed guilty of the crime of perjury."

The indictment further charges:

"At said city of St. Paul, Ramsey county, Minnesota, on the third day of February, A. D. 1897, the said Thomas B. Scott, then and there being, did wrongfully, unlawfully, knowingly, wilfully, falsely, corruptly, and feloniously swear and make oath before one Ed. H. Irwin, then and there a duly appointed, qualified, and acting notary public within and for Ramsey county, Minnesota, the said Ed. H. Irwin then and there having lawful authority to administer such oath, and the same being an occasion upon which an oath is and was by law required; that a certain statement and affidavit, in writing, by him, the said Thomas B. Scott, subscribed, being, and purporting to be, the annual statement of the condition and affairs of said Life Insurance Clearing Company for the year ending December 31, 1896, to the insurance commissioner of the state of Minnesota, and which said statement said Life Insurance Clearing Company was required by law to make, transmit to, and file with the insurance commissioner of the state of Minnesota, and did make and transmit to and file with said insurance commissioner of the state of Minnesota, and which said statement said Thomas B. Scott then and there subscribed and swore to with the intent that it be uttered, published, transmitted, and delivered to the insurance commissioner of said state of Minnesota as true, was and is true; which said statement and affidavit is in the words and figures as follows."

Then follows the statement, which is headed,

"Gain and Loss Exhibit of the Life Insurance Clearing Co. for the Year 1896."

The first subhead is as follows:

"Annual statement for the year ending December 31, A. D. 1896, of the condition of the Life Insurance Clearing Co., organized under the laws of the state of Minnesota, made to the insurance commissioner of the state of Minnesota, pursuant to the laws of said state.

President, T. B. Scott.
Vice President, F. P. Strong.
Secretary, H. Burton Strait."

Another subhead is as follows: "II. Income During Year 1896." The nineteenth item under this head is as follows:.

(19) From all other sources, viz:
  Commission of ................              $289.63
  For surplus fund...............$12,500.00
  Real estate acquired...........   5,000.00   $17,500.00

Another subhead in the statement is as follows: "IV. Assets as per Ledger Accounts." The eighth item under this head is, "(8) Cash deposited in bank, $17,008.92." The next subhead is "V. Liabilities," and the fourteenth and sixteenth items under this head are as follows:

(14) Amount due by the company for borrowed money, including ($  ) interest due or accrued       (Nothing)

(16) Amount of any other liability of the company, viz. premiums paid in advance, $  (Nothing)

(It sufficiently appears from the fact that no amount was placed opposite either of these items in the column of figures—footed up under each head—that it was intended by the statement to make it appear that there was no liability of the character mentioned in either of these two items.) After giving a number of items under the seventh subhead, and some miscellaneous items, the statement contains the following affidavit:

"State of Minnesota, County of Ramsey—ss.: Thos. B. Scott, president, and H. Burton Strait, secretary, of the Life Insurance Clearing Co., being duly sworn, depose and say, and each for himself says, that they are the above-described officers of the said company, and that on the thirty-first day of December last all of the above-described assets were the absolute property of the said company, free and clear from any liens or claims thereon, except as above stated; and that the foregoing statement, with the schedules and explanation hereunto annexed and by them subscribed, are a full and correct exhibit of all the liabilities, and of the income and disbursements, and of the general condition and affairs of the said company, on the said thirty-first day of December last, and for the year ending on that day, according to the best of their information, knowledge, and belief, respectively.     Thos. B. Scott,
              H. Burton Strait.

Subscribed and sworn to before me, this 3d day of February, A. D. 1897.

Ed. H. Irwin,
Notary Public,
Ramsey Co., Minn.

[Notarial Seal, Ramsey Co., Minn.]"

The statement then gives some further items, not here material, and then the indictment charges as follows:

"And which said statement was then and there wilfully, knowingly, and corruptly false, as he, the said Thomas B. Scott, then and there well knew. That in truth and in fact the said Life Insurance Clearing Company did not, at the close of business on said 31st day of December, A. D. 1896, or at all on said day, or at the time of the making of said statement, or the making of oath thereto, have, own, or possess resources or assets of the kind designated in said statement as item 19. From all other sources, viz.: For surplus fund, $12,500.00,' of Schedule 'II, income during 1896,' and did not have or receive at all during the year 1896 the sum of twelve thousand five hundred (12,500) dollars, or any other sum whatsoever, for surplus fund, nor did the said Thomas B. Scott have or possess any knowledge, information, and belief, or either, nor did the said Thomas B. Scott believe, that the said Life Insurance Clearing Company did, at the close of business on December 31st, 1896, or at all on said day, or at the time of the making of said statement, or the making of oath thereto, have, own, or possess, or receive, during said year of 1896, the sum of twelve thousand five hundred dollars ($12,500.00), or any other sum whatever, for surplus fund; all as he, the said Thomas B. Scott, then and there well knew.

"That in truth and in fact the said Life Insurance Clearing Company did not, at the close of business on said 31st day of December, A. D. 1896, or at all on said day, or at the time of the making of said statement or the making of oath thereto, have, own, or possess resources or assets of the kind designated in said statement as item '8, cash deposited in banks, $17,008.92,' of Schedule 'IV. Assets as per Ledger Accounts,' and did not have said sum of seventeen thousand and eight dollars and ninety-two cents ($17,008.92), or any other sum whatever, deposited in bank or banks, or at all, except the sum of four thousand five hundred and eight dollars and ninety-two cents ($4,508.92), nor did the said Thomas B. Scott have or possess any knowledge, information, and belief, or either, nor did the said Thomas B. Scott believe, that the said Life Insurance Clearing Company did, at the close of business on December 31st, 1896, or at all on said day, or at the time of the making of said statement or at the making of oath thereto, have, own, or possess said sum of seventeen thousand and eight dollars and ninety-two cents ($17,008.92), or any other sum whatsoever deposited in bank or banks, or at all,

except the sum of four thousand five hundred and eight dollars and ninety-two cents ($4,508.92), all as he, the said Thomas B. Scott, then and there well knew.

"That in truth and in fact the said Life Insurance Clearing Company did, at the close of business on December 31st, 1896, and on December 31st, 1896, and at the time of the making of said statement, and at the making of oath thereto, have total policy claims under Schedule 'V. Liabilities,' of said statement, to the amount of twenty thousand nine hundred and ninety-three dollars and twelve cents ($20,993.12), and did on said 31st day of December, A. D. 1896, and at the close of business on said day, and at the time of the making of said statement, and the making of oath thereto, have liabilities in unpaid death claims, for the year ending December 31, 1896, in the sum of twenty thousand nine hundred and ninety-three dollars and twelve cents ($20,993.12); all as he, the said Thomas B. Scott, then and there, when he made oath to said statement as aforesaid, well knew and believed.    That in truth and in fact the said Thomas B. Scott, when he made oath to said statement as aforesaid, did not have or possess any knowledge, information, or belief, or either, nor did he, the said Thomas B. Scott, believe, that the said Life Insurance Clearing Company did, at the close of business on the said December 31st, 1896, or at all on said day, or at the time of the making of said statement, or the making of oath thereto, have liabilities in unpaid death claims in any less sum than said sum of twenty thousand nine hundred and ninety-three dollars and twelve cents ($20,993.12); but he, the said Thomas B. Scott, did then and there well know and believe that the liabilities of said Life Insurance Clearing Company in unpaid death claims were then and there, and on December 31st, 1896, and at the close of business on said 31st day of December, 1896, the sum of twenty thousand nine hundred and ninety-three dollars and twelve cents ($20,993.12).

"That in truth and in fact the said Life Insurance Clearing Company did on said December 31st, 1896, and at the close of business on said day, have liabilities, of the character designated in items '14' and '16' of 'V. Liabilities,' of said statement, in and to an amount exceeding the sum of twelve thousand dollars, as he, the said Thomas B. Scott, then and there, when he made oath to said statement, well knew and believed.    That in truth and in fact the said Thomas B. Scott, when he made oath to said statement, as aforesaid, did not have any knowledge, information and belief, or either, nor did he, the said Thomas B. Scott, believe, that the said Life Insurance Clearing Company had liabilities of the character designated in items '14' and '16' of 'V. Liabilities,' of said statement, in any less sum than the sum of twelve thousand dollars, but he, the said Thomas B. Scott, did then and there know and believe that the said Life Insurance Clearing Company did, on December 31st, 1896, and

at the close of business on said day, have liabilities of the character designated in items '14' and '16' of 'V. Liabilities,' of said statement, in a sum and amount exceeding the sum of twelve thousand dollars; all as he, the said Thomas B. Scott, then and there well knew; all of which said matters and statements, and each and all thereof, so made oath to and sworn to by the said Thomas B. Scott, were then and there material in and upon said inquiry into the condition and affairs of the said Life Insurance Clearing Company, before and within the jurisdiction of the insurance commissioner of the state of Minnesota, and all of which said matters and statements, and each of them, and the matters and statements so made oath to, and sworn to by the said Thomas B. Scott, as aforesaid, were then and there wilfully, knowingly, and corruptly false, as he, the said Thomas B. Scott, then and there well knew."

1. Defendant contends that it is not sufficiently charged in the indictment that any oath was administered to the defendant upon which perjury can be predicated. G. S. 1894, § 5641, gives the form for "oath of persons signing affidavits, verifications and other papers," as follows:

"You do solemnly swear that the contents of this affidavit, (verification or paper,) by you subscribed, are true, as therein stated. So help you God."

We cannot hold that, as defendant seems to contend, the indictment should charge in so many words that this form was administered when the oath was taken. It was not necessary, under the common law, to charge in the indictment that when the oath was administered the words, "So help you God," or any other set of words, were used. It was sufficient to charge that the accused "was in due manner sworn and did take his corporal oath" (2 Chitty, Crim. L. 432); "was sworn and took his corporal oath" (Id. 439, 440, 443); "did then and there take his corporal oath and was sworn" (Id. 445). True, these forms are placed in among other forms, in which the words, "duly sworn," or "was in due manner sworn," are used, but the authorities do not seem to attach any great or controlling efficacy to the word "due" or "duly" in such connection. The form for an indictment for perjury given by our statute is as follows:

"On his examination as a witness, duly sworn to testify the truth, on the trial of a civil action in the court of ————, between C. D.,

plaintiff, and E. F., defendant, which court had authority to administer such oath, he testified falsely, that (stating the facts to be alleged to be false,) the matters so testified being material, and the testimony being wilfully and corruptly false." G. S. 1894, § 7239, Form No. 24.

Section 7247 provides:

"The indictment is sufficient if it can be understood therefrom: * * *
Sixth, That the act or omission charged as the offense is clearly and distinctly set forth, in ordinary and concise language."

The indictment in this case charges that the accused,.

"Then and there being, did wrongfully, unlawfully, knowingly, wilfully, falsely, corruptly, and feloniously swear and make oath before * * * [the notary] that a certain statement and affidavit * * * by him * * * subscribed * * * was and is true."

In our opinion, this charges sufficiently, and with sufficient positiveness, that defendant was duly and legally sworn to the affidavit, and that the allegations above quoted are not a mere conclusion.

2. It is further claimed that the affidavit sworn to and subscribed by defendant does not identify any statement or report as the one referred to in his affidavit. The statement which immediately precedes the affidavit is not signed by either this defendant, or by Strait, the secretary. But, as will be observed, the affidavit refers to "the foregoing statement, with schedules and explanations hereunto annexed, and by them [the affiants] subscribed." Counsel contend that, as neither the statement, schedules, nor explanations were so subscribed, there is nothing identified to which the affidavit relates. We cannot so hold. The words, "by them subscribed," may be rejected as surplusage or false description, and there is still sufficient remaining to identify the documents to which the affidavit refers. They are the "foregoing" documents, "hereunto annexed," and it sufficiently appears that they preceded and were so annexed to the affidavit.

3. It will be observed that item 19 of the statement contains these entries: "For surplus fund, $12,500; real estate acquired, $5,000; [total], $17,500." There is nothing in the claim that it does not

appear from the statement or affidavit that this surplus fund and this real estate were acquired during the year 1896. The subhead under which these items appear is entitled, "Income During the Year 1896," and the affidavit states that the "foregoing statement," schedules, etc.,

"Are a full and correct exhibit of all the liabilities, and of the income and disbursements, and of the general condition and affairs, of said company on said 31st day of December last, and for the year ending on that day."

Counsel further contend that, as to item 9 above quoted, "Cash deposited in bank, $17,008.92," the indictment merely negatives the assertion that this money was in the bank, and not the assertion that it actually existed at the time as an asset of the company. We cannot so hold. The indictment states that the company did not have that sum, "or any other sum whatever, deposited in bank or banks, or at all, except the sum of $4,508.92."

4. Neither can we hold that, under said section 104, the indictment charges two offenses,—one for making a false annual statement, and the other for committing perjury. As alleged in the indictment, the charge of making the false statement is mere matter of inducement, leading up to, and forming a part of, the crime of perjury, which is the one which the indictment charges. This disposes of all of the questions raised having any merit, and answers all the questions certified which were argued.

The order overruling the demurrer is affirmed.

COLLINS, J.

I dissent as to that part of the main opinion which holds that in the indictment it is sufficiently charged, and with sufficient positiveness, that the defendant was "duly and legally sworn to the affidavit." The language on which this conclusion is founded is that the accused did then and there wrongfully, etc., "swear and make oath." This manner of alleging what must appear in an indictment for perjury—that the accused was regularly sworn—is not in accordance with any of the forms prescribed in the text-books. Thus, we find: "Was sworn and took his corporal oath" (Wharton, Prec. Ind. 279, 285–320; 2 Chitty, Crim. L. 172–262; Archbold, Crim. Pl.

312, 317, 318); "was in due manner sworn and took his oath" (Wharton, Prec. Ind. 284, 286, 294, 314); "was in due manner sworn and did make affidavit in writing and take his corporal oath" (Wharton, Prec. Ind. 290); "was in due manner sworn to make true answers" (Wharton, Prec. Ind. 291; 2 Chitty, Crim. L. 179); "was then and there duly sworn" (Wharton, Prec. Ind. 294, 316); "did take his corporal oath and then and there did swear" (Wharton, Prec. Ind. 300, 304; 2 Chitty, Crim. L. 202); "was legally sworn" (2 Swift, Syst. Laws Conn. 834); "took his solemn affirmation" (Wharton, Prec. Ind. 305); "took his corporal oath" (2 Chitty, Crim. L. 184, 189, 195, 258); "did take his oath" (2 Chitty, Crim. L. 185). Nor does it conform to the words used in G. S. 1894, § 7239, Form No. 24. And allegations, in substance the same, have been held insufficient in U. S. v. McConaughy (D. C.) 33 Fed. 168; People v. Dunlap, 113 Cal. 72, 45 Pac. 183. See also State v. Divoll, 44 N. H. 140.