F. C. MASSEE v. HOWARD G. GIBBS.[1]

November 5, 1926.

No. 25,596.

**When contract becomes binding upon parties to it.**

Although all of the terms of a proposed written contract are finally agreed upon there is no contract if either of the parties has expressed the intention not to be bound until a formal contract is executed by both and such execution has not taken place. Up to that moment either party may withdraw.

Contracts, 13 C. J. p. 290 n. 12, 13; p. 303 n. 52.

[1]Reported in 210 N. W. 872.

Action in the district court for Polk county. The case was tried before Watts, J., who ordered judgment in favor of plaintiff. Defendant appealed from an order denying his motion for a new trial. Reversed.

*W. E. Rowe* and *Bangs, Hamilton & Bangs,* for appellant.

*O'Brien & Sylvestre,* for respondent.

STONE, J.

Action for damages for the breach by the vendor of a supposed contract to convey land. After a trial without a jury and a decision for plaintiff assessing his damages at $5,000, defendant appeals from an order denying his motion for a new trial.

The contract, if any, is to be found in the correspondence between the parties. Plaintiff lives at East Grand Forks, Minnesota, and defendant at Princeton, Illinois. The correspondence began in January, 1924, and ended in August. By June 19th the terms were pretty well agreed upon, and plaintiff wrote saying that he saw "no reason why contract could not be made at any time."

The negotiations contemplated a renewal by defendant of a $32,000 mortgage on the farm. In his letter of June 19th plaintiff suggested that the completion of the "contract" at once "would not interfere with the deal you have on for loan." He proceeded as follows:

"If you wish I can draw contract covering terms as planned and send it to you. Possibly this would be the best way. * * * If contract and terms are agreeable you do not need to come up until such time as you had planned to * * * look after your other interest here." On June 21st defendant rejoined in a letter saying that his "going north" would depend upon "whether it will be necessary for me to be there on account of a contract, but if you will make up a copy and forward same to me, and if agreeable it will not be necessary for me to come now."

Complying with the suggestion that he make the initial draft of the contract, plaintiff sent one to defendant with a letter of July 3d. July 9th defendant wrote plaintiff returning the unsigned contract

with, as he said, "the changes that seemed right to complete our deal for the land," adding:

"I believe you will find this as near as possible to the conditions which I wrote you in the possible purchase of the land by contract." That letter concluded as follows: "Have another copy made, and if satisfactory to you forward the two copies with your signature * * * I see no reason why we can't close it right up."

In accordance with that letter plaintiff immediately had the contract redrawn and signed it in duplicate. On July 16th he sent both originals to defendant. The letter of transmission read in part:

"Enclosed please find two copies of contract for deed. * * * I have executed both contracts, you can execute one and return to me."

On July 24th defendant acknowledged receipt of that letter and the contracts. Hearing nothing further from defendant, on August 4th plaintiff wrote asking how soon the loan would be closed "so that you can sign up the contract forwarded to you." He proceeded to explain:

"The only reason that there is any hurry in the matter is that we would like to know where we are at."

There are other aspects of the case not necessary to be mentioned. We assume that the parties had reached complete agreement upon terms. We may assume also that plaintiff intended to be bound by the correspondence even though the contracts were never formally executed by both himself and defendant. But it cannot be assumed that defendant intended any such thing and that particular issue must be decided the other way. The correspondence makes it clear that all through defendant did not intend to be bound, and never expressed his assent to become bound, without the formal execution of the contract for deed. No other conclusion can follow the constantly prospective and conditional import of the correspondence. All of it contemplated a formal contract and indicated the intention to close the deal only by the signing of one. All through the notion appears that nothing would be closed until the contract for deed was signed by both.

Defendant's letter of July 9th is the communication relied upon to bind him. It does not do so, for defendant's reference in the first paragraph was to the signing of the document which would consummate "the possible purchase of the land by contract," the contract so referred to being explicitly the document which accompanied that letter. The request that plaintiff return the contracts with his signature was not accompanied by any statement that when that was done there would be a contract but that, if plaintiff would sign, defendant could "see no reason why we can't close it right up." That is a mere prediction that the contract would be closed speedily rather than an assent to become bound immediately and without further condition. It goes without saying that the expression of an intention to enter into a contract, even in the very near future, or the prediction that one would be closed speedily, has no legally binding effect.

This is not a case where there has been a "mere reference to a future contract in writing" wanted by one or more of the parties as a memorial of something already finally agreed upon, but is rather one where the "reduction of the agreement to writing and its signature" has been made a condition precedent to its completion. Lamoreaux v. Weisman, 136 Minn. 207, 161 N. W. 504. We have found the subject nowhere better considered than in Mississippi & D. S. S. Co. Ltd. v. Swift, 86 Me. 248, 29 Atl. 1063, 41 Am. St. 545. After an exhaustive review of the authorities there is the following summary of their conclusions:

"From these expressions of courts and jurists, it is quite clear that, after all, the question is mainly one of intention. * * * If the written draft is viewed by the parties merely as a convenient memorial, or record of their previous contract, its absence does not affect the binding force of the contract; if, however, it is viewed as the consummation of the negotiation, there is no contract until the written draft is finally signed.

"In determining which view is entertained in any particular case, several circumstances may be helpful, as: whether the contract is of that class which are usually found to be in writing; whether it

is of such nature as to need a formal writing for its full expression; whether it has few or many details; whether the amount involved is large or small; whether it is a common or unusual contract; whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations. If a written draft is proposed, suggested or referred to, during the negotiations, it is some evidence that the parties intended it to be the final closing of the contract."

See also Central B. P. Co. v. Village of Highland Park, 164 Mich. 223, 129 N. W. 46, Ann. Cas. 1912B, 719; Ambler v. Whipple, 87 U. S. 546, 22 L. ed. 403; Alexandria Bd. Co. v. Miloslowsky, 167 Iowa, 395, 149 N. W. 504; Mercantile T. Co. v. Sunset Rd. O. Co. 176 Cal. 461, 168 Pac. 1037; El Reno W. G. Co. v. Stocking, 293 Ill. 494, 127 N. E. 642; Barber-Colman Co. v. Magnano Corp. (C. C. A.) 299 F. 401; Lynn v. Richardson, 151 Iowa, 284, 130 N. W. 1097; Lyman v. Robinson, 14 Allen, 242; Winn. v. Bull, 7 L. R. (Ch. D.) 29; Ridgway v. Wharton, ·6 House of Lords Cases 182.

The principle involved is clear. One may condition his entry into contract relations as he sees fit, resorting even to absurdity if he chooses. So, although there be complete agreement on terms, if one expresses the intention not to be bound until the signing of a formal contract, there is no contract if that condition is not fulfilled. Until it is fulfilled, the matter remains in negotiation, and either party may withdraw. The cases cited for plaintiff on this point do not deny the rule. They do deny its application, as they should, to cases where it was held that the agreement had become presently binding as a contract, that being the intention inferable from the conventional situation where everything has been finally agreed upon and neither party has conditioned his assumption of the contractual relationship and obligation upon the execution of a final and more formal instrument. In such cases, the contemplated final document is desired as and intended to be a more convenient and desirable memorial of what is already binding but informal in its expression. For example, in American S. & R. Co. v. United States, 259 U. S. 75, 42 Sup. Ct. 420, 66 L. ed. 833, there was an acceptance of a proposal concluding thus:

"Your acceptance of this letter is requested pending issuance of formal contract, which will go forward in a few days."

In the face of such a clearly expressed intention to bind at once, it was obvious, as remarked by Mr. Justice Holmes, that "the expressed contemplation of a more formal document did not prevent the letters from having the effect that otherwise they would have had."

We are clear that this is neither a case where the parties have bound themselves to enter into a written contract in the future, nor one where they have completed one by correspondence, intending a subsequent formal document to be signed merely as a memorial or confirmation of it. We regard it rather as one where at least one of the parties, defendant, intended and expressed the intention from the start not to be bound at all until the execution of the formal contract for deed. In that situation he was at liberty to withdraw until that contract became effective by signing. It follows that the order appealed from must be reversed. As a matter of law there must be a finding of no contract.

Order reversed.