# STATE v. M. E. BEAN.[1]

January 15, 1937.

No. 30,874.

See 193 Minn. 113, 258 N. W. 18.

*Ell M. Roston,* for appellant.

[1]Reported in 270 N. W. 918.

*Harry H. Peterson,* Attorney General, and *M. F. Kinkead,* County Attorney, for the State.

JULIUS J. OLSON, JUSTICE.

Defendant appeals from a judgment convicting him of the crime of a gross misdemeanor. The indictment charged defendant with unlawfully making and issuing an insurance policy in violation of 1 Mason Minn. St. 1927, § 3762, and with a prior conviction for violating the same section. The prior conviction is reported in State v. Bean, 193 Minn. 113, 258 N. W. 18.

As defendant attacks the indictment, it is necessary that its essential contents be stated. It is therein charged that on March 19, 1934, at St. Paul, Ramsey county, this state, the defendant then and there being president and registrar of American Mutual Protective Association, a domestic corporation, "and being then and there unlawfully engaged in the writing of insurance, did wilfully, unlawfully, wrongfully and knowingly make and issue and direct the same to be done, a policy of insurance" upon the life of one Lafayette C. Jackson, in violation of G. S. 1923, § 3313, which by its terms requires every insurance company as a condition precedent to do business to make and file with the commissioner of insurance an acceptance of its provisions and the procurement of a certificate from him of compliance therewith; also, that neither the company nor defendant had obtained a license to transact the business of insurance in this state, a requirement under § 3318 of the same statute. The indictment next charges the facts of the former conviction to which reference has been made. As a matter of fact, the present indictment is in substance and effect the same as the one used in State v. Bean, 193 Minn. 113, 258 N. W. 18, except insofar as pleading a second offense is concerned.

■ Defendant's first contention is that the indictment charges two different offenses, *i. e.,* that he was charged with violating § 3313 and also § 3318; that inasmuch as two different and distinct requirements are involved in the two sections therefore the indictment is void for duplicity. We cannot sustain that view. It is obvious, in fact the present indictment states: "that the statute

of the state of Minnesota under which this indictment is drawn is for the violation of § 3762 * * * and is the identical statute under which the hereinbefore mentioned prior indictment was drawn and the hereinbefore mentioned conviction of the said M. E. Bean was had." The only crime charged is that defendant made and issued a policy of insurance knowing that the company for which he was acting, and did act, was not authorized to do business in this state. It was failure on the part of the company to comply with either or both of these sections that was made the basis for and furnished the reasons why defendant was charged with violation of the section under which the prosecution was had. The prohibited act here sought to be punished was not the failure of the company to comply with either of these sections (3313 and 3318), but defendant's act in knowingly and wilfully making and issuing the policy under the circumstances stated. "All matters of inducement which are necessary in order to show that the act charged is a criminal offense must be stated." 3 Dunnell, Minn. Dig. (2 ed.) § 4375; State v. Barry, 77 Minn. 128, 79 N. W. 656. See also State v. Scott, 78 Minn. 311, 81 N. W. 3.

█ Defendant also urges that if this policy was issued by him it was not issued in Ramsey county, but in the county of Hennepin, where the office of the company was located. On this phase the court instructed the jury, and there is no criticism made thereof:

"The general acceptance of the term 'issue' or 'issued' in connection with an insurance policy is the delivery or the putting into effect of the policy, giving it life and force, and in this particular case the policy itself, in section 4 of article 1, on the inside of the policy—I think on the second page near the top, provides that it shall not have any force or effect until its delivery to and acceptance by the applicant. The delivery to the applicant has been shown by the testimony of Mrs. Jackson, and the acceptance by the applicant has been shown by the payment over a period of months, as evidenced by the testimony of Mrs. Jackson, and also by the receipts which are in evidence here.

"Now, if you find from the evidence that this instrument, Exhibit B, which has been spoken of at times as a certificate, and at

other times as a policy—I say, if you find that this instrument was made and issued and delivered to Lucy Jackson in this county—in Ramsey county, then the offense charged in the indictment, if committed, was committed in this county. But if you find that this State's Exhibit B was made and issued in Hennepin county, then you would have to find that the defendant was not guilty of this offense."

The evidence is clear that the insured and his beneficiary both resided in St. Paul and that the policy was there received. "One may condition his entry into contract relations as he sees fit, resorting even to absurdity if he chooses." 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 1728; Massee v. Gibbs, 169 Minn. 100, 104, 210 N. W. 872, 874. So here, defendant's company by its own choice of words stipulated, as a condition precedent, the effective moment when the contract was to go into effect. It "intended and expressed the intention ＊ ＊ ＊ not to be bound at all until" the policy was actually received by the insured. (169 Minn. 104.) That event took place at St. Paul. We therefore think the jury was justified in finding that the policy was "issued" in Ramsey county. Such being the fact, the court had jurisdiction of the offense.

■ There is some claim that the prosecuting attorney went too far in his argument to the jury. This particular language is objected to:

"There is one other thing, one other element I overlooked. This company is not licensed to do business in the state of Minnesota, and as a legal matter it is not one of the companies excluded from qualifying. Those are matters that are already taken care of. The testimony of Mr. Yetka, the insurance commissioner, is that they were not authorized to write insurance in this state, not licensed by his department, and the statute of course providing that insurance companies, to write insurance, must be licensed there.

"Now, there has got to be reason in something. If it was not to Bean's personal advantage not to comply with the laws of this state and not to register with the insurance commissioner and comply with it and get a license there, don't you think but what he would be up there and be licensed?"

We fail to find anything seriously objectionable in this argument. What counsel sought to show by his argument was that Bean had a motive for issuing policies in violation of the statute, and that this motive was founded upon a desire to avoid state supervision or control over its and his activities in this business. Defendant did not testify. Failure so to do would not warrant comment on account thereof by counsel for the state. However, the argument is not open to criticism on that ground.

■ Defendant claims that 1 Mason Minn. St. 1927, § 3762, is not the appropriate section to the crime here sought to be punished. That section provides:

"Every company, and every officer and agent of any company, making, issuing, delivering or tendering any policy of insurance of any kind, or directing any of the same to be done, in wilful violation of any of the provisions of law, for a first offense, shall be guilty of a misdemeanor, and for each subsequent offense, of a gross misdemeanor."

Defendant's contention that § 3366 alone applies cannot be sustained. There is no conflict between the two sections. What § 3762 seeks to accomplish is to prevent an offender from becoming an habitual repeater. We can see no constitutional or other objection to the validity of such legislation, and counsel's industry has failed in finding (or at any rate in furnishing) a single authority to sustain this view. "It is the exclusive province of the legislature to declare what acts, deemed inimical to the public welfare shall constitute a crime, to prohibit the same, and impose appropriate punishment for a violation thereof. Judicial consideration of such enactments is limited to the inquiry whether the constitutional rights of the citizens are thereby violated or impaired." 2 Dunnell, Minn. Dig. (2 ed.) § 2407. "Statutes are to be so construed as to suppress the mischief and advance the remedy, to promote rather than defeat the purpose of the legislature." 6 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 8962.

■ It is also claimed that the sentence imposed is too harsh. Under the law defendant could have been sentenced to one year in

the workhouse. The court sentenced him to nine months. In view of the fact that this offense was committed only nine days after he had been convicted in Hennepin county of a similar offense, it would seem that the court in the instant case was well within the exercise of sound discretion imposing the sentence it did. If he were amenable to lawful restraint he should have heeded the judgment there entered, profited by that experience, and thereafter refrained from repeating the same offense.

The other assignments of error have been examined but found wanting in substantial merit.

A careful review of the record leaves no doubt in our minds that defendant was properly adjudged guilty and that the sentence imposed is entirely justified.

Judgment affirmed.

MR. JUSTICE PETERSON, having appeared of counsel when this case was argued and submitted, took no part in its consideration or decision.

