BJORNSON v. FIVE STAR MFG. CO.

No. 7361.

Supreme Court of North Dakota.

Dec. 23, 1953.

Emanuel Sgutt and Herman F. Wegner, Fargo, for appellant.

Johnson & Hoghaug, Lakota, Johnson & Rausch, Bismarck, for respondent.

BURKE, Judge.

This is an action for breach of contract. In his complaint, the plaintiff alleged that he is the inventor of, and the owner of letters patent upon, a device described as a cam lug battery terminal and bolt; and that on April 21, 1949, plaintiff and defendant entered into an agreement, by the terms of which defendant was to have exclusive license to manufacture and sell the patented device, the plaintiff was to have a royalty upon each of the devices sold and defendant was to purchase plaintiff's stock on hand, materials and tools for the sum of $10,000; that in pursuance of the agreement defendant obtained samples from plaintiff, published circulars and catalogues advertising the device and sent its salesmen out in the territory to sell it and that thereafter defendant repudiated the contract. Plaintiff alleged several items of damage in the total sum of $34,100. The defendant, in its answer, denied that any final agreement between the parties had ever been reached and alleged that the claimed agreement was not evidenced by any written note or memorandum signed by the defendant and was therefore invalid under the statute of frauds.

Upon the trial of the case, the jury returned a verdict in favor of the plaintiff for the sum of $2,500. Defendant moved for judgment notwithstanding the verdict. This motion was granted and judgment was entered accordingly. This appeal is from the judgment.

The only issue to be decided is whether the evidence in the case was sufficient to make the question of the existence of a valid contract between the parties a question of fact for the jury.

The Five Star Manufacturing Company is engaged in the business of manufacturing automobile accessories at East Grand Forks, Minnesota. Through its sales manager it entered into negotiations with the plaintiff in March 1949 with the object of securing the exclusive right to manufacture and sell plaintiff's patented device. As a result of these negotiations a meeting between the parties was arranged. This meeting took place on April 20, 1949 at the offices of the defendant in East Grand Forks. Present at the meeting were the plaintiff and Mr. Johnson, his attorney, Mr. Freeman, president of the defendant company, Mr. Mitchell, its sales manager and Mr. Vanyo, one of the company's employees. At this meeting the terms upon which the plaintiff would license the defendant to sell his patented device were thoroughly discussed and it is evident that all parties were satisfied that an agreement had been reached as to the principal provisions which were to be incorporated into a written contract in the event that the parties decided to go ahead with the transaction. During the three weeks following this meeting negotiations were continued by an ex-

change of letters ending with a letter written by the president of the defendant corporation terminating the negotiations. No written contract was ever executed. Plaintiff however contends that the oral agreements reached at the meeting on April 20th constituted a contract and it is this claimed contract which he alleged was breached.

A determination of whether informal oral agreements as to provisions which are to be incorporated into a written contract, in themselves constitute a contract depends upon the intention of the parties as shown by the circumstances of the case. 17 C.J.S., Contracts § 49, page 391; 12 Am. Jur., Contracts § 25, p. 523; Annotation 122 A.L.R. 1232.

It is clear from the testimony of all the witnesses that at the meeting on April 20th, Mr. Freeman, the principal negotiator for the defendant, withheld his consent to the transaction until he should have an opportunity to discuss the proposition with Mr. Kincaid, one of the directors of the corporation. The arrangement made by the parties was that Mr. Freeman was to discuss the matter with Mr. Kincaid that evening and let Mr. Johnson know by phone the following day what the result of the discussion was. This was done and on April 22nd, Mr. Freeman confirmed the phone conversation with Mr. Johnson by letter which was as follows:

"This letter is intended to confirm my telephone conversation yesterday in which I told you it was our intention to accept Mr. Bjornson's offer to manufacture his Cam Lug Cable Clamps.

"We would appreciate it if you would have Mr. Bjornson write us a letter of 'intent'. We would also like to ask that you prepare an agreement along the lines of our discussion held Wednesday for our consideration and execution."

This letter is not an acceptance of Mr. Bjornson's offer. It is a statement of an intention to accept. It requested that a contract be prepared for consideration as well as execution. The clear import of the letter is that acceptance is to be made at some future time by the execution of a formal contract, the terms of which are still open to consideration. The same day Mr. Johnson wrote a letter to defendant's sales manager in which he said:

"Andy (Mr. Freeman) called yesterday and advised me that you people are ready to go ahead with Mr. Bjornson's proposition as we discussed it.

"This letter is being written as a preliminary to confirm our negotiations and agreement. It being understood that we will prepare the final contract as quickly as possible which will incorporate all the details of the agreement.

"Mr. Bjornson's proposition was briefly this: (here follows a summary of the proposal)

"We suggest that upon receipt of this letter you write us a letter confirming that this letter contains the essential points of the agreement reached. We will then proceed immediately to the preparation of the contract."

The statement by Mr. Johnson that the letter was "a preliminary to confirm our negotiations and agreement. It being understood that we will prepare the final contract * * *," implies an intention on his part that his client should not be bound until the final contract was executed.

On May 3rd, Mr. Johnson wrote Mr. Freeman as follows:

"I am enclosing herewith tentative draft of your contract with Mr. Bjornson. I wish you would have your attorney look this over and let us have his opinion on the same or any changes you are going to request or insist on * * *."

The whole tenor of this letter is inconsistent with the contention that a final agreement had been reached. According to its terms the draft of the contract is tentative and the defendant still has the right to request or insist on changes.

On May 4th Mr. Freeman wrote to Mr. Johnson as follows:

"Mr. Mitchell has shown me your letter of April 22nd regarding the preliminary terms which you have prepared for our review and comment.

"With reference to paragraph four, we here in Grand Forks are in agreement that we did not understand that the 2¢ royalty applied to the first 500,-000 units of each year's production with 1¢ on all units thereafter. * * "

To this letter Mr. Johnson replied on May 6th.

"You have undoubtedly now received the tentative draft of the contract. It is my suggestion that you go over it in detail.

"I suggest that we get this contract as far along as possible so that we know all of the points of difference before we have a conference. At that conference let us try to iron out our differences and reach a final written contract. * * * The way to bring this to a close is to agree on what we disagree on and then see if we can finally get together by giving a little here or there on both sides."

As expressed in these two letters, the attitude of plaintiff's attorney and of defendant's president was that no contract had yet been made and that the terms upon which the final contract would be made were still open to negotiation.

On May 14th, Mr. Freeman ended the negotiations by a letter in which he stated that he did not believe a satisfactory agreement could be reached.

We think the letters of the plaintiff's attorney and of defendant's president affirmatively demonstrate that the negotiators intended that neither party should be bound until the final contract was executed. Since negotiations were abandoned before that contract was executed, there was no contract which can be made the basis of a cause of action. Metzler v. O. J. Barnes Co., 58 N.D. 455, 226 N.W. 501; Palen v. Pierce, 44 S.D. 316, 183 N.W. 973; Marti v. Ludeking, 193 Iowa 500, 185 N.W. 476; Dexter v. Ankiewicz, 26 Cal.App.2d 326, 79 P.2d 400.

It follows that the decision of the district court granting the motion for judgment notwithstanding was correct.

The judgment is affirmed.

MORRIS, C. J., and SATHRE, CHRISTIANSON and GRIMSON, JJ., concur.