# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4153

_____

Little Otters of Love, LLC; E. Hammond Meredith

*Plaintiffs - Appellants*

v.

Kailen Rosenberg; Global Love Mergers, Inc., doing business as Kailen Love and Life Architects; The Lodge, LLC

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 18, 2017
Filed: February 20, 2018
[Unpublished]

_____

Before WOLLMAN, BEAM, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Little Otters of Love, LLC (Little Otters), and E. Hammond Meredith (collectively plaintiffs) appeal the district court's[1] *sua sponte* dismissal of their action

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

against Kailen Rosenberg, Global Love Mergers, d/b/a Kailen Love and Life Architects (Life Architects), and The Lodge, LLC (The Lodge) (collectively defendants), for want of complete diversity under 28 U.S.C. § 1332(a). We affirm.

## I. Background

Meredith first met Rosenberg in 2012, when he retained her professional dating service, Life Architects, to assist him in finding a romantic partner. Although unsuccessful in 2012, Meredith contracted with Life Architects again in November 2014 for a one-year term. When the contract expired in November 2015, Life Architects sent Meredith a final invoice, along with eight potential matches. In January 2016, Meredith expressed interest in one of the eight women. Because the contract had expired, Rosenberg demanded an additional $100,000 fee to arrange a meeting. When Meredith refused, Rosenberg suggested that Meredith become an investor in her new business—The Lodge— in return for which she would introduce Meredith to the match.

The Lodge was formed as an "upscale online singles dating club" on or around December 18, 2015. Rosenberg allegedly told Meredith that although millions of dollars had already been invested in The Lodge, she needed an additional investment to build the website.[2] After negotiations, Meredith agreed to invest $500,000 through his limited liability company, Little Otters, in exchange for a twenty percent membership interest. Under this agreement, Little Otters was to become one of seven members of The Lodge. Little Otters thereafter transferred $50,000 to The Lodge on February 5, 2016, and the remaining $450,000 served as a line of credit to be spent at the discretion of The Lodge's managers.

---

[2]According to the agreement's "Schedule of Members and Percentage Interests," Rosenberg had $74,765.45 invested in The Lodge.

Meredith thereafter signed a copy of an amended and restated operating agreement (agreement) on behalf of Little Otters. On March 18, 2016, plaintiffs' attorney sent the signed copy of the agreement to The Lodge's attorney, stating, "Attached hereto please find the signature pages executed by my client on behalf of his Nevada LLC. Please hold these in trust until you have gathered the remainder of the signature pages from your side." Rosenberg signed the agreement on March 23, 2016, and provided plaintiffs with a copy.

Suspecting that Rosenberg was using his investment for expenses related to Life Architects and not The Lodge, Meredith confronted her about these concerns on March 29, 2016. Later that day, Meredith's attorney attempted to withdraw Little Otters' signature page, claiming that because The Lodge had yet to collect signatures from every member, the agreement had not been fully executed. Plaintiffs' attorney also demanded a return of the $113,144.80 that Little Otters had advanced to The Lodge—more than $30,000 of which was tendered after Meredith's execution of the agreement. The Lodge refused to do so and stated that it would agree to release Meredith from The Lodge in exchange for a payment of $342,284.21.

Plaintiffs filed a complaint in federal district court, alleging state-law claims for fraudulent and negligent misrepresentation, unjust enrichment, breach of fiduciary duty, civil theft, conversion, and failure to register The Lodge's securities. As amended, the complaint asserted that Meredith is domiciled in Florida and that Little Otters is a Nevada limited liability company, with its principal place of business in Las Vegas, Nevada. The complaint also alleged that all of the defendants "are either residents of Minnesota, they are incorporated in Minnesota, and/or their principal place of business is in Minnesota." Am. Compl. ¶ 4.

Upon reviewing the amended complaint, the district court determined that plaintiffs had failed to allege "'with specificity the citizenship of the parties.'" Little Otters of Love, LLC, et al. v. Kailen Rosenberg, et al., No. 0:16-CV-01142-RHK-

-3-

SER, at 2 (Aug. 9, 2016) (quoting Barclay Square Props. v. Midwest Sav. & Loan Ass'n of Minneapolis, 893 F.2d 968, 969 (8th Cir. 1990)). The district court also noted that the agreement stated that Little Otters was a member of the Lodge, which had the effect of "creating the anomalous situation that [Little Otters] is on both sides of the case (as a Plaintiff and as a member of The Lodge) . . . which would automatically defeat diversity jurisdiction." Id. at 4. Accordingly, the district court concluded that plaintiffs had not adequately alleged the existence of jurisdiction over the case and ordered plaintiffs to show cause why the action should not be dismissed for lack of subject-matter jurisdiction.

After reviewing plaintiff's memorandum of law in support of jurisdiction and defendant's response thereto, the district court determined that Little Otters became a member of The Lodge when Meredith signed the agreement on behalf of Little Otters and Little Otters thereafter performed under the agreement by providing funds to The Lodge. Accordingly, it concluded that because Little Otters was on each side of the case—as a plaintiff and also as a member of The Lodge—diversity did not exist.

## II. Discussion

We review the question of subject matter jurisdiction *de novo* and the findings upon which a diversity determination is based for clear error. Altimore v. Mount Mercy Coll., 420 F.3d 763, 768 (8th Cir. 2005).

The district court must "consider whether it has subject matter jurisdiction in every case." Hart v. United States, 630 F.3d 1085, 1089 (8th Cir. 2011). The plaintiff bears the burden of establishing diversity jurisdiction by a preponderance of the evidence, and the district court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990) (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d

884, 891 (3d Cir. 1977)). There is no "presumptive truthfulness attache[d] to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. (quoting Mortensen, 549 F.3d at 891).

Diversity jurisdiction over state-law claims exists when the amount in controversy exceeds $75,000 and there is "complete diversity of citizenship among the litigants." OnePoint Sols., LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007) (citing 28 U.S.C. § 1332(a)). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." Id. For purposes of establishing diversity, a limited liability company's citizenship is the citizenship of each of its members. Id.

The question then is whether Little Otters became a member of The Lodge and thereby destroyed complete diversity. Because both sides rely on Minnesota law in their briefs and neither party argues that the law of any other state should apply, we look to Minnesota law to determine whether Little Otters entered into a binding agreement with The Lodge. Although the existence of a contract is generally a question for the fact-finder, when "the relevant facts are undisputed, the existence of a contract is a question of law, which this court reviews de novo." TNT Prop., Ltd. v. Tri-Star Developers LLC, 677 N.W.2d 94, 101 (Minn. Ct. App. 2004).

Little Otters argues that its entry into the agreement was conditional because of its direction that The Lodge hold its signature pages in trust until all member signatures were obtained. Under Minnesota law, a party to a contract "may condition his entry into contract relations as he sees fit[.]" Massee v. Gibbs, 210 N.W. 872, 874 (Minn. 1926). If a party conditions its intent to be bound upon the signing of a formal contract, then there is no contract until that signing has occurred. Id. Stated another way, until the signing of the contract, "the matter remains in negotiation, and either party may withdraw." Id. If, on the other hand, a party has "assented to all the

-5-

essential terms of the contract and proceed[s] to perform in reliance upon it, the mere reference to a future contract . . . will not negative the existence of the present, binding contract." Asbestos Prods., Inc. v. Healy Mech. Contractors, Inc., 235 N.W.2d 807, 809 (Minn. 1975).

Little Otters argues that the absence of the signatures of The Lodges' other members constituted its failure to fulfill a condition precedent that precluded the full execution of the agreement and perforce meant that Little Otters never became a member of The Lodge. It is undisputed, however, that Little Otters invested $50,000 in The Lodge after negotiating the terms of its membership. It is also undisputed that it advanced approximately $60,000 through a line of credit, which included advances of more than $30,000 after Little Otters had signed the agreement. We thus agree with the district court's determination that by assenting to the material terms of the contract with The Lodge and thereafter proceeding to perform under the contract, plaintiffs' post-execution investment belies their contention that they never intended to be bound by the contract. Little Otters' membership in The Lodge thus precluded the existence of complete diversity, and so the district court did not err in dismissing the complaint for want of jurisdiction.

The judgment is affirmed.

_____