## ASBESTOS PRODUCTS, INC. v.
## HEALY MECHANICAL CONTRACTORS, INC.

235 N. W. 2d 807.

October 24, 1975—No. 44659.

*Maun, Hazel, Green, Hayes, Simon & Aretz, Merlyn C. Green,* and *Geoffrey P. Jarpe,* for appellant.

*Lewis L. Anderson,* for respondent.

Heard before Rogosheske, Kelly, and Yetka, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

This is an appeal from a judgment of the Ramsey County District Court awarding damages to plaintiff, Asbestos Products, Inc. (Asbestos), in a breach of contract action. We reverse.

In the summer of 1968, defendant, Healy Mechanical Contractors, Inc. (Healy), contracted to install plumbing and do other mechanical work on a construction project known as the Radisson South Hotel. In June 1969 Healy requested Asbestos to submit a bid for subcontracting work on pipe insulation, which it did in two separate proposals. Asbestos proposed to do the work on a "cost-plus" basis, whereby Healy would pay the cost of

labor, materials, and other items, plus a percentage for overhead and profit. Healy accepted this offer in a letter dated July 23, 1969, stating that it was their "intent to enter into a contract" with Asbestos. Both parties agree that a binding contract existed, and Asbestos began its work on the project in July 1969.

In the fall of 1969, Asbestos was informed that a "ceiling" price would later be established and was asked to periodically submit cost estimates so that Healy could give its anticipated costs to the project owner. These cost estimates were not to be considered fixed "ceiling" figures.

In February 1970, Asbestos was asked to submit a firm, maximum price for its entire work based upon plans and specifications furnished to it. Its first oral proposal of $150,000 was rejected by Healy. A second figure of $140,000 was accepted and Asbestos then confirmed in a letter dated February 16, 1970, which read in part:

"We agree to furnish labor and material necessary to insulate the plumbing and heating piping and equipment in accordance with plans and specifications of Bruch and Morrow Inc., Engineers, and revised Drawings ME1-M2 through M42 issued to us on February 11, 1970.

"The above work will be performed on a cost plus basis, as outlined in our Proposal 1059 dated June 7, 1969, and not to exceed the sum of one hundred and forty thousand dollars ($140,000)."

Using this figure, Healy submitted its total projected cost to the project owner.

On April 14, 1970, an unsigned standard-form subcontract was sent to Asbestos by Healy. For whatever reason, Asbestos did not receive it until mid-May, by which time a strike had delayed work and led to increased costs. By this time, Asbestos had billed $122,000 of the total $140,000, with one-third of its work remaining to be done. Realizing it could not complete the work at the original ceiling price, it requested a higher one, although in the same letter acknowledging its obligation to abide by the $140,000 figure. Asbestos abandoned work on the project entirely in

August 1970 and Healy was obliged to retain another company to finish the job, resulting in increased costs to Healy.

In September 1970, Asbestos commenced this lawsuit against Healy for breach of contract, alleging wrongful termination of its subcontract. Healy answered and counterclaimed for breach of contract, seeking damages for the difference between the cost of completing the work with another subcontractor and its ceiling contract price with Asbestos. The district court in findings of fact and conclusions of law awarded Asbestos $6,612 for work done and unpaid for, and $510 for additional labor and materials, totaling $7,122 in damages.

The issue, as we view this case, is simply whether Asbestos was bound by the ceiling price modification of February 1970, so that a failure to perform on its part constituted breach of contract.

Plaintiff maintained at the trial and now on appeal that the proposal it made on February 16, 1970, was never accepted by Healy and that the parties were still operating under the original "cost-plus" arrangement of June 1969 with no ceiling price. This is entirely contrary to all the available evidence, and we agree with the trial court's determination that the February 16, 1970, agreement was accepted by Healy as a modification of the original contract.

A contract not within the Statute of Frauds which is still executory may be orally modified at any time to add, qualify, or delete terms and still be valid and binding upon the original contracting parties. Youngberg v. Lamberton, 91 Minn. 100, 102, 97 N. W. 571, 572 (1903); 4 Dunnell, Dig. (3 ed.) § 1774. Such modification requires no new consideration, since the consideration from the original contract attaches to and supports the modified contract. Mitchell v. Rende, 225 Minn. 145, 149, 30 N. W. 2d 27, 30 (1947); 4 Dunnell, Dig. (3 ed.) § 1776. The evidence is conclusive that the parties here did indeed add to the terms of the original "cost-plus" agreement, by establishing a ceiling of $140,000 beyond which payments would not be made.

This was done pursuant to an oral proposal of Asbestos, accepted immediately by Healy, and confirmed in the letter of February 16 by Asbestos. At that point, the parties were bound by this modification.

The point on which we disagree with the trial court is its view that the unsigned formal written subcontract submitted by Healy to Asbestos in April 1970 somehow so affected the agreement of February 16 that Asbestos did not breach that contract when it abandoned the project. The submitted writing was the Standard Associated General Contractors of Minnesota Sub-Contract, which Healy had not signed. Asbestos refused to accept or sign it for two reasons. First, it asserted that the formal subcontract contained additional terms not discussed or made part of the February modification. However, Lee Anderson, president of Asbestos, testified that the form subcontract was responsive in all respects to the earlier agreements of June 1969 and February 1970. Second, that the subcontract was delayed in delivery to Asbestos and by the time it was received an unforeseen strike had commenced. This supposed justification ignores, however, the fact that up until the delivery of the formal subcontract both parties had through mutual performance, consistently relied upon the earlier modified contract. In fact, Mr. Anderson testified that he felt there was a binding contract between the parties regardless of the fact that Healy had not transmitted a formal written contract to Asbestos earlier. We also take special note of the letter to Healy dated May 18, 1970, in which Asbestos acknowledged that it was bound by the $140,000 ceiling figure for the work. Even assuming arguendo that there was a late submission of the standard-form subcontract and that it contained materially different terms, these elements, plus Asbestos' refusal to execute the subcontract, were wholly immaterial, because an enforceable modified contract was already in existence and was being performed by the parties. Bradley v. Metropolitan Music Co. 89 Minn. 516, 95 N. W. 458 (1903). In our view, this submitted formal subcontract added nothing to what had already

been agreed upon, was not signed by either party, and really had no effect upon their respective duties and responsibilities. The trial court could have decided this case without even considering the formal subcontract since neither party was bound in any way by its terms.

When contracting parties make the reduction of their agreement to writing and its signature by them a condition precedent to its completion, there will be no contract until that is done, and this is true although all the terms have been agreed upon. But where the parties have assented to all the essential terms of the contract and proceed to perform in reliance upon it, the mere reference to a future contract in writing will not negative the existence of the present, binding contract. Lamoreaux v. Weisman, 136 Minn. 207, 210, 161 N. W. 504, 505 (1917). We find that there is no indication in the evidence that Healy and Asbestos intended the execution of the formal written subcontract to be a condition precedent to the completion of a valid contract. In fact, the enforceable agreements of June 1969 and February 1970, did not make *any* mention whatsoever of a contemplated later written contract embodying all the agreed-upon terms. The fact that both parties had performed for nearly 9 months indicates to us that a valid agreement was already in operation. That agreement was the modified contract of February 16, 1970, which contained a $140,000 ceiling figure.

In our view, the trial court erred in determining that Healy breached its contract with Asbestos. On the contrary, Asbestos was faced with a situation where it was losing money. It had already billed $122,000 of the maximum of $140,000 by mid-April 1970, with one-third of its work remaining to be completed. Realizing that it had estimated its total cost too low, it abandoned the project rather than finish with no payment beyond the ceiling figure. By doing so, it was guilty of breaching the modified contract it had with Healy, and not vice versa.

Reversed and remanded for proceedings not inconsistent with this opinion.