**TRIPLE B & G, INC., et al., Appellants,**

v.

**CITY OF FAIRMONT, Respondent.**

**No. C6–92–977.**

Court of Appeals of Minnesota.

Dec. 22, 1992.

Elton A. Kuderer, Erickson, Zierke, Kuderer, Madsen & Wollschlager, P.A., Fairmont, for appellants.

Thomas E. Emmer, Erstad & Riemer, P.A., Minneapolis, for respondent.

Considered and decided by NORTON, P.J., and KALITOWSKI and HARTEN, JJ.

## OPINION

NORTON, Judge.

Appellants challenge the trial court's finding that property dispute between them and respondent was settled. We affirm.

## FACTS

Appellants Martin Luther High School and Triple B & G, Inc. are the record owners of certain real property in Martin County. Beginning in 1975, respondent City of Fairmont used property adjacent to appellants' property as a spoil site for dredge materials. Appellants allege that dredge materials escaping from the City's property have permanently damaged their property.

On February 20, 1990, appellants filed suit in Martin County District Court seeking damages and injunctive relief against the City for negligence and trespass. Trial was set for January 22, 1992. Between the filing of appellants' complaint and the time set for trial, the parties attempted to settle the dispute.

In a letter to the City dated December 27, 1988, appellants' attorney, Mark Madsen, stated, "it is very important that my clients receive adequate drainage, such as existed prior to the deposit of the silt." Presumably, the City's depositing of dredge material had made it difficult for appellants to drain their property. Madsen then outlined two different settlement offers: the City could purchase the westerly six acres of appellants' land for $35,000, or the City could pay $25,000 in damages to appellants. Both options contained provisions guaranteeing adequate drainage for appellants.

The City rejected appellants' offers of settlement on September 27, 1989, and submitted two counter proposals: the City would purchase six acres of land from appellants for $15,000, or the City would pay appellants $15,000 in damages in exchange for a partial dedication of land for public street purposes. Both offers expressly allowed appellants the opportunity to hook up to the City's storm sewer for drainage purposes. However, the City withdrew these settlement offers on October 24, 1989.

On December 3, 1991, appellants' new attorney, Elton Kuderer, sent a letter to the City indicating appellants' rejection of the City's proposals. Kuderer then stated, "My clients have authorized me to propose the following settlement * * *." The first proposal called for appellants to sell 5.13 acres to the City for $15,390. The second called for the City to pay $7,500 in damages. The latter proposal would also require the City to allow appellants to hook up to the City's storm sewer to ensure adequate drainage. The first proposal did not include a provision for adequate drainage.

On December 11, 1991, Kuderer wrote a letter to appellants stating that the City's attorney had told him the City was not interested in acquiring the 5.13 acres at appellants' price. Instead, Kuderer said, the City made a counteroffer of $12,800. This counteroffer was confirmed in a December 16, 1991 letter from the City's attorney, Thomas Emmer, to Kuderer. In this letter, Emmer referred to the City's proposal as an "offer."

On January 17, 1992, Emmer wrote Kuderer to confirm that the City had accepted appellants' offer of December 3, 1991, to sell 5.13 acres for $15,390. Emmer's letter referenced a phone conversation between him and Kuderer on the previous day, January 16, 1992. In the phone conversation, appellants indicated their desire to get an agreement regarding drainage. In his letter to Kuderer, Emmer agreed that some arrangement regarding drainage should be made; however, Emmer stated that as far as he was concerned, the drainage concern was ancillary in nature and the lawsuit had been fully settled.

The City filed a motion to compel enforcement of the settlement on January 22, 1992. After a hearing, the trial court issued an order enforcing the settlement. The order also provided that appellants would reserve an easement over the City's newly acquired land to construct, repair and maintain subsurface drainage. The order did not require the City to allow appellants to hook up to the City's sewer system. Appellants filed a notice of appeal with this court on May 22, 1992.

## ISSUES

I. Did appellants' attorney have authority to settle this dispute?

II. Was the alleged settlement sufficiently definite and complete to be enforced?

III. Was the appellants' offer of settlement revoked by a counteroffer of the respondent?

IV. Did the alleged settlement comply with the statute of frauds?

## ANALYSIS

### I.

■ Appellants claim that any settlement of their claim is invalid because their attorney lacked authority to settle the dispute. Whether appellants' attorney had authority to settle their claim is a question of fact; as such, the trial court's resolution of the issue will be upheld unless clearly erroneous. *Citizens State Bank of Hayfield v. Leth*, 450 N.W.2d 923, 925 (Minn. App.1990).

■ Minn.Stat. § 481.08 (1990) allows "an attorney [to] bind a client, at any stage of an action or proceeding, by agreement * * * made in writing and signed by such attorney." However, the statute does not allow an attorney to settle a client's cause of action without the client's authority to do so. Unless there is an emergency, an attorney must have express authority to settle a client's claim. *Rosenberg v. Townsend, Rosenberg & Young, Inc.*, 376 N.W.2d 434, 436–37 (Minn.App.1985).

■ The trial court's finding that Kuderer had authority to settle appellants' cause of action was not clearly erroneous. In his letter to Thomas Emmer dated December 3, 1991, Kuderer stated that appellants "have authorized me to propose the following settlement * * *." Kuderer then outlined two settlement options, only one of which contained a provision regarding drainage. In an affidavit, Daryl Bartz, a principal Triple B & G stockholder, stated:

I am aware of the Offer of Settlement made by Mr. Kuderer. * * * Mr. Kuderer asked me if the language that had been included in his December 3, 1991 letter to Attorney Emmer was satisfactory, and I told him I thought it was.

At the hearing, Kuderer argued that Bartz was only confirming that he had read the second settlement option (i.e., the one with the drainage provision). Bartz's affidavit failed to make that distinction.

The trial court's resolution of this issue was not clearly erroneous. In his letter outlining the settlement options, Kuderer stated that he had authority to settle the case. The letter unambiguously fails to

include a drainage provision in the first option. Bartz stated that he read this letter and thought it satisfactory. These facts are sufficient to support a finding that Kuderer had the authority to settle the case.

## II.

■■■ Appellants also argue that the settlement is unenforceable because it is indefinite and incomplete. Appellants claim that the settlement is indefinite because it fails to adequately describe the property, and that the settlement is incomplete because material terms regarding drainage are omitted. Where there is no dispute over the relevant facts, the question of the existence of a contract is solely a matter of law for determination by the court. *Malcak v. Westchester Park Dist.,* 754 F.2d 239, 243 (7th Cir.1985); *see also Associated Tabulating Servs., Inc. v. Olympic Life Ins. Co.,* 414 F.2d 1306, 1310–11 (5th Cir.1969); *Megarry Bros., Inc. v. United States,* 404 F.2d 479, 483–84 (8th Cir.1968). This court may review a trial court's resolution of legal issues de novo. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). The facts here are not in dispute; the issue is simply whether the alleged settlement between the parties, as a matter of law, is sufficiently definite and complete.

■■■ If an alleged contract is so uncertain as to any of its essential terms that it cannot be consummated without new and additional stipulations between the parties, it is not a valid agreement. However, an agreement should be upheld where, despite some incompleteness and imperfection of expression, the court can reasonably find the parties' intent by applying the words as the parties must have understood them. *Hartung v. Billmeier,* 243 Minn. 148, 151, 66 N.W.2d 784, 788 (1954).

■■■ The trial court held that the City would be responsible for supplying an adequate legal description of the property. This ruling implicitly acknowledges that the property description in appellants' offer, while imperfect, was adequate. It gave the parties adequate notice of the property that was the subject of the negotiation. At trial, the judge referred to obtaining an accurate legal description as "housekeeping."

■■■ This holding was not error. Appellants' offer of December 3, 1991, to sell "5.13 acres" was arguably ambiguous since it did not specify which land was to be sold. The City's offer was likewise unspecific as to the land to be purchased. However, this ambiguity can be resolved by examining the previous correspondence between the parties. The letters written by the attorneys demonstrate that both parties understood which property was being discussed. The terms of a final and integrated written expression may not be contradicted by parol evidence of previous "understandings and negotiations * * * for the purpose of varying or contradicting the writing." *Apple Valley Red–E–Mix, Inc. v. Mills–Winfield Eng'g Sales, Inc.,* 436 N.W.2d 121, 123 (Minn.App.1989) (quoting 3 Arthur L. Corbin, *Corbin on Contracts* § 573 (1960)), *pet. for rev. denied* (Minn. Apr. 26, 1989). However, if a contractual term is ambiguous, parol evidence may be allowed to reach the intent of the parties. *Id.*

Appellants also charge that the settlement was invalid because material terms regarding drainage were missing. However, the omission of drainage provisions seems to have been intentional. Appellants offered the City a choice between (1) purchasing 5.13 acres or (2) paying damages and allowing appellants to hook up to the City's sewer system. Appellants must not have considered drainage to be a material term with regard to the first option.

## III.

■■■ Appellants contend that their settlement offer was terminated prior to the City's acceptance by way of a City counteroffer on December 16, 1991. *See Lewis v. Johnson,* 123 Minn. 409, 411, 143 N.W. 1127, 1127 (1913) (a counteroffer terminates the power of an offeree to accept the original offer); *Bauer v. American Int'l Adjustment Co., Inc.,* 389 N.W.2d 765 (Minn.App.1986), *pet. for rev. denied* (Minn. Sept. 24, 1986). Respondent argues that the communication of December 16, 1991 did not constitute a counteroffer.

The characterization of this communication is not determinative of the issue. The record shows that, even after December 16, 1991, appellants continued to press the City to accept the terms of their original offer. By acting in this manner, appellants effectively renewed their original offer, reinstating the power of respondent to accept. *See Haugland v. Canton*, 250 Minn. 245, 248, 84 N.W.2d 274, 277 n. 7 (1957); *Lewis*, 123 Minn. at 411, 143 N.W. at 1127.

### IV.

■ Appellants also assert that the alleged settlement fails to satisfy the statute of frauds. Minn.Stat. § 513.05 (1990) provides that any contract for the sale of land is void "unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party by whom the lease or sale is to be made * * *." The statute of frauds should not be applied in a rigid manner when the property description used, by itself or as amplified by other instruments or papers with which the memorandum is expressly or impliedly connected, provides an adequate guide to locate and identify the property in the light of the surrounding circumstances and in light of facts of which a court can take judicial notice. *Colstad v. Levine*, 243 Minn. 279, 282, 67 N.W.2d 648, 652 (1954).

■ As noted above, the parties seemed to know which property was the subject of their negotiations. Moreover, the trial court noted that establishing the boundary line would not be difficult since the location of the north, west, and south lines is known. The trial court correctly determined that the settlement satisfies the statute of frauds.

### DECISION

The trial court's decision that appellants and respondent settled their dispute is affirmed.

Affirmed.