**TNT PROPERTIES, LTD., Appellant,**

v.

**TRI–STAR DEVELOPERS LLC, et al., Respondents.**

No. A03–1186.

Court of Appeals of Minnesota.

March 23, 2004.

Mark J. Kallenbach, Minneapolis, MN, for appellant.

Richard M. Carlson, Minneapolis, MN, for respondents.

Considered and decided by TOUSSAINT, Presiding Judge, HALBROOKS, Judge, and HUSPENI, Judge.*

## OPINION

HALBROOKS, Judge.

After reaching a settlement in their real estate transaction, the agreement was read into the record in open court, and all par-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

ties expressly assented to its terms. Appellant later refused to honor the agreement, arguing that respondents had breached the agreement by failing to timely tender the first installment payment or, in the alternative, that the agreement was unenforceable under the statute of frauds. Respondents moved to compel settlement, and the district court granted the motion. We affirm.

## FACTS

On February 3, 2003, appellant TNT Properties, Ltd., and respondents Tri–Star Developers, LLC, Homoudi Sabri, Sabri Holding, LLC, Kenneth W. Sorteberg, and LandDevCo Corporation, appeared before the district court to resolve an ongoing dispute over the sale of several commercial properties. After lengthy negotiation, Richard Carlson, counsel for respondents, advised the court that the parties had reached a settlement agreement and wished to orally place it on the record. Respondents' co-counsel, Richard Morris, stated the terms of the agreement as follows:

> The purchase price, Your Honor, will be $3,100,000 ... paid by ... $50,000 in earnest money, $25,000 of which will [be] paid one week from today. The second $25,000 will be paid two weeks from today.
>
> In addition to those two payments, a promissory note will be given executed by myself for $50,000.
>
> In the event that this transaction does not close as and when agreed, the $50,000 earnest money will be forfeited and the promissory will become due and payable.
>
> The closing will occur on or before June 1 of 2003. At the closing, $300,000 will be paid by the purchaser to the seller....
>
> . . . .

> ... to the extent we don't close on or before June 1, 2003, the penalty is a forfeiture of $50,000 that was paid and the $50,000 note becoming due and payable.
>
> . . . .
>
> And of course ... a cancellation of the agreement.

None of the parties objected to Morris's recitation of the terms. Instead, the attorneys and appellant's representatives, Floyd Olson and Ted Olson, engaged in a colloquy with the court, discussing more specific aspects of the agreement.

At the conclusion of the discussion, the court stated, "[Y]ou have entered into an agreement now. And again it is a promise to make a promise, technically, but it's an agreement. It relies upon the good faith of the parties here and satisfies the Court at least at this point." Each of the parties then expressly agreed to be bound by the terms of the agreement. Respondents also agreed to memorialize the agreement in writing and to send copies to appellant along with the first installment payment.

Respondents did not tender payment on February 10. On February 11, after learning that appellant believed that the agreement had been breached, Morris contacted appellant's counsel, Mark Kallenbach. Morris told Kallenbach that the settlement documents were prepared and on schedule for February 12, the date that he believed they and the first installment payment were due. Kallenbach then directed Morris to send the documents and the $25,000 check to him.

Appellant received the settlement documents and the $25,000 check on February 12, but refused to sign the documents and directed Kallenbach to return them. Kallenbach's letter informed respondents that his clients were objecting because (1) the payment was untimely and (2) the settle-

ment documents did "not comport with the settlement agreement stated on the record." But according to Carlson, when he told Kallenbach that "[appellant] well knew that the payments were always due on Wednesdays, [Kallenbach] did not deny [the] statement but only referenced that Mr. Morris stated to the Court that the first earnest money payment was due one week from Monday, February 3, 2003, and his client was basing its refusal to accept the earnest money on that statement."

Nonetheless, on February 17, Carlson sent Kallenbach the second earnest payment. In the attached letter, Carlson acknowledged that he had "inadvertently excluded a provision" from the agreement, but stated that he had "no objection to the inclusion of [the] provision" and noted that his clients were "willing to provide you whatever reasonable documentation you feel is necessary." Carlson's letter also stated that

> [a]s you are well aware ... you agreed that since [Morris] was drafting [the agreement] from memory without a transcript that if there are any items that you wish included we would cooperate in redrafting the Agreement as proposed. You assured Mr. Morris that that was understandable and would not be a problem.

Appellant received the second payment, but again directed Kallenbach to return it to respondents.

Respondents moved to enforce the settlement agreement. The district court recognized that the parties had a "long and somewhat acrimonious history," including "a pattern of contractual compliance problems on the part of [respondents] and an atmosphere of distrust," which may have contributed to appellant's reaction. But the court granted respondent's motion, holding that (1) the settlement agreement was an enforceable purchase agreement,

(2) the tender of the first payment less than 48 hours from when it was due was not a material breach, (3) even if the breach were material, appellant would be required to cancel the contract under Minn.Stat. § 559.21 (2002), giving respondents an opportunity to cure, and (4) an agreement entered on the record is a writing sufficient to satisfy the statute of frauds. Based on this reasoning, the court directed the parties to fully perform the agreement, subject to several amended dates. This appeal follows.

## ISSUES

1. Is the statute of frauds, Minn.Stat. § 513.04 (2002), satisfied when a settlement agreement involving the conveyance of real property is orally placed on the record in open court?

2. Was there mutual assent between the parties with respect to the terms and conditions of the agreement?

3. Should respondents have been permitted to cure their default pursuant to Minn.Stat. § 559.21 (2002)?

4. Did the district court abuse its discretion by amending the dates of payment in the agreement?

## ANALYSIS

### I.

■ Appellant argues that the district court erred in determining that "an agreement entered on the court's record is a writing sufficient to satisfy the statute of frauds." This issue presents a question of law, which we review de novo. *Employers Mut. Cas. Co. v. A.C.C.T., Inc.*, 580 N.W.2d 490, 493 (Minn.1998).

The statute of frauds provides, in relevant part:

> No ... interest in lands ... shall hereafter be created, granted, assigned, sur-

rendered, or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the parties creating, granting, assigning, surrendering, or declaring the same, or by their lawful agent thereunto authorized by writing.

Minn.Stat. § 513.04 (2002).

The district court cited *Beach v. Anderson*, 417 N.W.2d 709 (Minn.App. 1988), *review denied* (Minn. Mar. 23, 1988), for the proposition that "the principle of the statute of frauds, to guard against leaving the proof of a contract dependent upon the memory and truthfulness of witnesses, is served where an oral agreement is memorialized before a court reporter and not left to the memory of witnesses." *See id.* at 713–14. Appellant contends that the court's reliance on *Beach* is misplaced because the transfer in *Beach* involved partnership property, or personalty, rather than real property. Appellant also contends that the district court's holding is erroneous because (1) an oral agreement does not constitute a "writing" under section 513.04 and (2) neither appellant nor its principals subscribed the agreement.

We disagree. In *Beach*, this court addressed whether the statute of frauds is satisfied when the parties stipulate to a restrictive non-compete covenant on the record. *Beach*, 417 N.W.2d at 713. In holding that the statute of frauds did not bar the covenant, the court found that

> [t]he agreement here was memorialized before a court reporter, not left to the memory of witnesses. Technical requirements regarding memoranda are only aids to discern where the truth lies in a given case. A court will not blindly apply technicalities if they lead to a conclusion repugnant to comment sense.

> Both [appellants] were present during negotiations and when the stipulation was recited. Both acknowledged that they understood its terms and agreed to be bound by them. If a note or memorandum exists as evidence of an oral contract, it will be enforced. Public policy inhibits perversion of the statute of frauds by those who would deny an oral contract.

*Id.* at 713–14 (citation omitted). Because the writing requirement under the statute of frauds is the same for conveyances of real property and non-compete covenants, we conclude that the rule in *Beach* is applicable here.

Additionally, courts in other jurisdictions have recognized that the statute of frauds is satisfied under facts similar to those presented here. For example, in *Kalman v. Bertacchi*, 57 Ill.App.3d 542, 15 Ill.Dec. 204, 373 N.E.2d 550 (1978), the court held that where an agreement involving the transfer of real property

> was arrived at by the parties and stated in open court; it was dictated to a court reporter and made a matter of record; each of the parties and their respective attorneys agreed to and understood the terms of the agreement [and][t]he entire proceeding was under the guidance and supervision of the court ... the mischiefs anticipated by the Statute of Frauds could not arise[.]

*Id.* at 556. The court also recognized that

> [w]hile recorded testimony has no signature, a signature's only purpose is authentication, and this is amply supplied in the case of an admission in court.... The purpose of the [statute of frauds, therefore,] is not forsaken in view of the fact that proof of the existence of an agreement is a matter of court record and cannot be disputed.

*Id.* (citations omitted). Likewise, in *Snyder v. Tompkins*, 20 Wash.App. 167, 579 P.2d 994 (1978), where an agreement for the sale of real property "was presented in

open court before a court reporter, thus solemnly memorializing that which the parties, through their counsel, represented as the agreement," the court held that the statute of frauds had no application. *Id.* at 998.

Here, the parties' agreement was the product of extensive negotiation, it was read into the record, and all parties advised the court, with counsel present, that they assented to be bound by the agreement. *See Beach,* 417 N.W.2d at 711–12. Moreover, by making a record of the agreement in open court, the safeguards of the statute of frauds have been satisfied. *See Olson v. Ronhovde,* 446 N.W.2d 690, 692 (Minn.App.1989) (holding that "[t]he basic purpose of the statute of frauds is only to provide reasonable safeguards to insure honest dealing . . . it was not enacted to make a fetish of literal statutory compliance" (quotation omitted)). Therefore, we conclude that by placing the terms of the agreement onto the record in open court and expressly assenting to those terms, the writing and subscription requirements of the statute of frauds have been satisfied "by act or operation of law." *See* Minn.Stat. § 513.04.

In reaching this conclusion, we reject appellant's argument that the agreement was nothing more than an outline of "deal-points" that would subsequently be reduced to writing. In *Massee v. Gibbs,* 169 Minn. 100, 210 N.W. 872 (1926), an action for damages for breach by the vendor of a contract to convey land, the court distinguished between cases where "there has been a mere reference to a future contract in writing" and those where "the reduction of the agreement to writing and its signature has been made a condition precedent to its completion." *Id.* at 103, 210 N.W. at 873 (quotation omitted). Concluding that "the question is mainly one of intent," the court held that

[i]f the written draft is viewed by the parties merely as a convenient memorial, or record of their previous contract, its absence does not affect the binding force of the contract; if, however, it is viewed as the consummation of the negotiation, there is no contract until the written draft is finally signed.

*Id.; see also Asbestos Products, Inc. v. Healy Mechanical Contractors, Inc.,* 306 Minn. 74, 78, 235 N.W.2d 807, 809 (1975) (stating that "[w]here the parties have assented to all the essential terms of the contract and proceed to perform in reliance upon it, the mere reference to a future contract in writing will not negative the existence of the present, binding contract").

The district court found that the agreement was "intended to settle all claims of the action" and "to be a substitute for the contract agreement which was the subject of the lawsuit." We agree. As the record demonstrates, no one declared an intention not to be bound until the signing of the formal agreement. To the contrary, each party explicitly stated that he would be bound by the agreement made on February 3. Moreover, as Carlson's February 17 letter indicates, the parties agreed that, because Morris was drafting the settlement documents from memory without a transcript, if the formal documents contained discrepancies, the parties would cooperate in redrafting the agreement "as proposed"—i.e., to comport with the parties understanding on February 3. Therefore, under these facts, the absence of a signed, written memorial does not alter the binding force of the agreement.

## II.

■ Appellant argues that the parties did not mutually assent to the essential terms of the agreement. A settlement of a lawsuit is contractual in nature, and to

constitute a full and enforceable settlement, there must be a definite offer and acceptance with a meeting of the minds on the essential terms of the agreement. *Jallen v. Agre,* 264 Minn. 369, 373, 119 N.W.2d 739, 743 (1963). Generally, the existence of a contract, as well as the terms of that contract, are questions of fact to be determined by the fact-finder. *Bergstedt, Wahlberg, Berquist Assocs., Inc. v. Rothchild,* 302 Minn. 476, 225 N.W.2d 261, 263 (1975). But where the relevant facts are undisputed, the existence of a contract is a question of law, which this court reviews de novo. *Vezina v. Best Western Inn Maplewood,* 627 N.W.2d 324, 328 (Minn.2001); *Triple B & G, Inc. v. City of Fairmont,* 494 N.W.2d 49, 53 (Minn.App.1992).

To support the argument that the parties had no "meeting of the minds," appellant contends that, while appellant believed that the first payment was due on Monday, February 10, with failure to perform rendering the agreement null and void,[1] respondents believed that the payment was due Wednesday, February 12. Respondents assert that the parties always understood that payments would be due on Wednesdays, that Morris mistakenly believed that they were in court on Wednesday, and that when Morris said "one week from today," he meant February 12, not February 10. Respondents further argue that February 12 was always the agreed-upon date of payment, and that appellant is attempting to take unfair advantage of Morris's misstatement in court. Although this issue was raised to the district court, the court did not specifically address the

mutual-assent argument. The court simply found that "the settlement agreement is an enforceable purchase agreement."

■■ Our first inquiry is whether the date of the first installment payment is an "essential term" of the agreement. A binding contract can exist despite the parties' failure to agree on a term if the term is not essential or can be supplied. Restatement (Second) of Contracts § 201, cmt. d (1981). The statute of frauds requires contracts for the sale of land to include terms specifying the (1) consideration, (2) parties to the contract, (3) land to be conveyed, and (4) general terms and conditions of the sale. *Malevich v. Hakola,* 278 N.W.2d 541, 544 (Minn.1979) (concluding that no written contract was formed where many essential terms, including down payment, installments, interest, and time of conveyance, were left to future agreement). These terms, as well as others, were contained in the parties' agreement. The term in dispute relates only to the first $25,000 installment of a $50,000 earnest payment, intended simply to secure the underlying $3.1 million agreement. Therefore, under these facts, we do not agree that the term is "essential" to the agreement.[2]

■■ But even if it were an essential term, appellant's argument still fails. This court has held that "an agreement should be upheld where, despite some incompleteness and imperfection of expression, the court can reasonably find the parties' intent by applying the words as the parties must have understood them." *Triple B &*

---

1. We note that appellant's argument is inconsistent in that it relies on the terms of the agreement, claiming the agreement is null and void for lack of performance, while at the same time arguing that there was no agreement due to lack of mutual assent.

2. Appellant also points to a discrepancy in the transcript concerning which of respondents' attorneys would guarantee the payment. Morris states in his affidavit that he, not Carlson, had agreed to guarantee the payment. This is not an "essential" term of the agreement.

*G,* 494 N.W.2d at 53. Minnesota follows the objective theory of contract formation, under which an outward manifestation of assent is determinative, rather than a party's subjective intent. *Speckel by Speckel v. Perkins,* 364 N.W.2d 890, 893 (Minn. App.1985) (finding that where attorney offered $50,000 to settle claim, but intended to offer only $15,000, the district court "correctly disregarded [the attorney's] protestations that the offer was unintended" and properly disregarded "the fact that the letter contained the unintended amount as the result of a mistake").

Here, Morris clearly stated that the first installment payment would be due "one week from today." This is an unambiguous statement; there is no dispute that "today" was February 3, and that "one week from today" was February 10. At best, Morris's statement was a unilateral mistake, but because there is no evidence of ambiguity, fraud, or misrepresentation, there is no basis for rescission. *See id.* at 893 (holding that a "unilateral mistake in entering a contract is not a basis for rescission unless there is ambiguity, fraud, misrepresentation, or where the contract may be rescinded without prejudice to the other party"). Furthermore, unlike in *Speckel,* Morris's statement does not raise a "presumption of error" that would impose on appellant a duty to inquire. *See id.* (finding that where the offeror's letter contained palpable inconsistencies, the facts raised a "presumption of error" that imposed a duty to inquire on the offeree). Therefore, disregarding respondents' subjective intent, we conclude that the outward manifestation of assent to the phrase "one week from today" is sufficient to establish mutual assent to the February 10 due date.

■ Although appellant does not raise the issue of material breach in its brief, and issues not argued in the appellant's brief are deemed waived, *see In re Application of Olson for Payment of Services,* 648 N.W.2d 226, 228 (Minn.2002), we nonetheless address the issue and hold that respondents did not materially breach the agreement. In *Coddon v. Youngkrantz,* 562 N.W.2d 39 (Minn.App.1997), this court held that "delay in a single installment payment is not the type of material breach or substantial failure of performance that cancels a contract for deed." *Id.* at 43; *see also Tarpy v. Nowicki,* 286 Minn. 257, 262, 175 N.W.2d 443, 447 (1970) (holding that the rights of a purchaser under a contract for deed are "not forfeited merely by delinquency in making an installment payment"). We agree with the district court's reasoning that

> [t]he agreement calls for a closing on or before June 1, 2003. The $50,000 earnest money would be forfeited and the promissory note would become due and payable only in the event that the transaction failed to close as and when agreed. The court believes that the defendants made an honest mistake in their belief that the first $25,000 was due on February 12 rather than February 10. The tender two days late, of an amount representing less than 1% of the $3.1 million deal and intended only as security if a closing does not occur, is not enough to nullify the entire deal.

Therefore, we conclude that there was an enforceable agreement between the parties and that the agreement was not breached by respondents' delay in making a single installment payment.

**III.**

■ Appellant contends that the district court erred in concluding that because the parties had a "valid purchase agreement governed by Minn.Stat. § 559.21 [2002]," appellant was required to

cancel the agreement and give respondents an opportunity to cure. Minn.Stat. § 559.21, subd. 2a, provides that "[i]f a default occurs in the conditions of a contract for the conveyance of real estate . . . that gives the seller a right to terminate" the contract. The seller may terminate the contract by serving notice specifying the conditions in default. *Id.* The buyer then, within the applicable statutory period, must comply with the conditions of default to maintain the contract in force. *Id.*

 The provisions of Minn. Stat § 559.21 do not apply to all purchase agreements. The test for determining whether the statute applies is:

> whether the agreement is a contract for the conveyance of real estate or any interest therein. This means a contract where both parties are bound by its terms. . . . And ordinarily it must be a contract where . . . either party can require performance by the other. In other words, the agreement must be sufficiently certain and complete in its essential terms that ordinarily specific performance will lie. . . . [W]hen the parties have left open an essential term for further negotiations, the court declines to make a contract for the parties and specific performance will not lie. . . . [T]he inquiry is whether a term essential to the final bargain is left open for further negotiations or is dependent on a contingency.

*Jones v. Amoco Oil Co.,* 483 N.W.2d 718, 724 (Minn.App.1992) (quoting *Romain v. Pebble Creek Partners,* 310 N.W.2d 118, 122 (Minn.1981)), *review denied* (Minn. May 15, 1992).

Appellant asserts that the specific terms of the agreement contemplate that the agreement would be "null and void and of no consequence to either party" if respondents failed to perform. To support its argument that this language, rather than Minn.Stat. § 559.21, should control, appellant seems to argue that because the settlement agreement is unenforceable as a matter of law under the statute of frauds, the agreement does not trigger Minn.Stat. § 559.21.

Appellant's argument is flawed for two reasons. First, as previously discussed, there is a valid, binding agreement; essential terms were not left to future negotiations, and the agreement does not rest on a contingency. *See Romain,* 310 N.W.2d at 122 (noting that proper inquiry is "whether a term essential to the final bargain is left open for further negotiations or is dependent on a contingency"); *cf. Jones,* 483 N.W.2d at 724 (where contingency that one party would obtain suitable financing was not met, other party was not required to follow procedures in section 559.21). Consequently, appellant cannot succeed in arguing that the agreement could not have triggered Minn.Stat. § 559.21.

Second, looking at the language of the agreement in context, it is clear that the parties intended the contract to be "null and void" only if respondents did not pay $300,000 at the closing on June 1, 2003. The transcript indicates that the following discussion took place:

> TED OLSON: The thing that I have a problem with is going into a . . . normal cancellation . . . if they don't come up with the $300,000 to close.
>
> . . . .
>
> FLOYD OLSON: If there isn't any performance, can't we stipulate that this agreement is null and void and with no consequence to either party at that point?
>
> MR. MORRIS: Your honor, under 559.21, you can't waive it. . . .
>
> . . . .

MR. KALLENBACH: They're not in possession. And obviously it's clear that until the $300,000 comes there's no possession, right?

MR. MORRIS: Right.

. . . .

MR. MORRIS: So, Your Honor, our agreement is that if there is not performance prior to June 1, the sellers will have the right to cancel the agreement in accordance with [Minn.Stat. § ] 559.21. Possession will not be relinquished by the sellers, but the cancellation—the 30-day cancellation can go forward and, of course, the $100,000 will be forfeited.

MR. KALLENBACH: That's fine with me. Ted, look, I can't change the statutory law. 559.21 says what it says.

TED OLSON: I understand that.

. . . .

FLOYD OLSON: Just make it clear that nobody can take over possession without it being given.

MR. KALLENBACH: $300,000.

This exchange contradicts appellant's argument that the parties agreed that the contract would be null and void if respondents were late in making the first earnest payment. Rather, it indicates that the agreement would be null and void only if respondents did not close with $300,000 on June 1, 2003. Moreover, the record makes clear that the parties understood that Minn.Stat. § 559.21 would be applicable in the event of a default. While respondents did not default on the agreement, we conclude that, even if they had, respondents would have been entitled to cure the default under Minn.Stat. § 559.21.

## IV.

Appellant's final argument is that the district court abused its discretion by sua sponte amending the terms of the agreement to change the dates of performance, asserting that this decision "is against logic and the facts in the record" because the parties did not agree to those dates. We disagree. Because the dates in the original agreement passed while the motion to enforce the settlement was pending, the district court was required to amend the dates to a time when performance of the agreement was possible. Without amended dates, no effect could be given to the court's order. We conclude that on this record the district court did not abuse its discretion by amending the dates of the parties' agreement.

## DECISION

Because the parties orally recited the terms of their settlement agreement on the record in open court and expressly assented to be bound by the agreement, the district court did not err in determining that the writing and subscription requirements of the statute of frauds were satisfied. Because we conclude that there was a meeting of the minds on the essential terms of the agreement, we also affirm the district court's decision that the agreement constitutes an enforceable purchase agreement. Because we conclude that the district court did not err in ruling that, even if respondents had materially breached the agreement, they would have been entitled to an opportunity to cure their default under Minn.Stat. § 559.21 (2002), we affirm on that issue. Finally, we find no abuse of discretion in the district court's decision to amend the dates of performance to make compliance with the court's order possible.

**Affirmed.**