*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0103**

Anita W. Sluck,
Appellant,

vs.

Terence E. Rapacz,
Respondent.

**Filed August 1, 2016
Affirmed
Stauber, Judge**

Hennepin County District Court
File No. 27-CV-12-14348

Richard S. Eskola, Columbia Heights, Minnesota (for appellant)

Mary M.L. O'Brien, Kathleen M. Ghreichi, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Ross, Judge; and Johnson, Judge.

## U N P U B L I S H E D   O P I N I O N

**STAUBER**, Judge

Appellant challenges the district court's order enforcing a settlement agreement, arguing that the parties did not have a meeting of the minds and that her attorney did not have authority to accept the settlement on her behalf. We affirm.

## FACTS

Respondent Terrence Rapacz, a veterinarian, treated appellant Anita Sluck's dogs. In October 2009, Rapacz asked appellant's late husband, John Sluck (Sluck), for a $60,000 loan to cover delinquent real-estate taxes. Sluck loaned him $60,000, as well as another $190,000 in March 2010. Despite the fact that Sluck was an attorney, the terms of the loan were vague; Rapacz agreed to an interest rate of five percent per annum, but there were no scheduled payments or a due date, and the loans were not documented in writing. Rapacz asserted that he told Sluck he would make interest payments when he was able to do so. Rapacz made three monthly interest payments of $1,041.75, and one double payment of $2,083.50, in 2010, but made no other payments on the loans. Sluck died in January 2011.

Appellant has been incapacitated since April 2008. In 2009 or 2010, Daniel Koehler, a former neighbor of the Slucks, was given a power of attorney to act on behalf of both Sluck and appellant. Koehler began this breach-of-contract and unjust-enrichment action to collect the loan balance from Rapacz.

After a June 2013 court trial on the contract and unjust-enrichment claims, the district court held that appellant failed to present sufficient evidence of a binding contract. But the district court also concluded that appellant "met her burden of proof in establishing a claim for unjust enrichment," and ordered judgment against Rapacz in the amount of $250,000 at five percent interest. Rapacz's motion for amended findings or new trial was denied. Rapacz appealed to this court, which reversed the district court's decision and remanded with the direction to determine if Rapacz had the current ability to

2

repay the loans. *Sluck v. Rapacz*, No. A13-2268, 2014 WL 4056071, at \*2 (Minn. App. Aug. 18, 2014). This court also concluded that Rapacz had not been unjustly enriched by failure to pay interest because there was no contract. *Id.*

On remand, the parties conducted more discovery. Appellant alleged that Rapacz had the ability to pay because he was living extravagantly. Rapacz filed documents showing that Koehler sought to have his wife and himself made beneficiaries of one of the Sluck trusts.

A few days before the hearing on remand, Rapacz's attorney, Kathleen Ghreichi, sent a final settlement offer to appellant's attorney, Richard Eskola. The terms of the offer were set forth in an email:

> \*$1300 per month at 2.5% interest. If the practice is sold during Dr. Rapacz's lifetime, those monthly payments would stop. At that juncture, [appellant] would instead receive 25% of the first down payment on the sale of the business, and 10% of any remaining payments until interest/principal are met.

> \***All** repayment obligations end upon Dr. Rapacz's death.

Eskola replied that he had forwarded the settlement offer to Koehler. Three days later, Eskola said he had "not yet heard back from my client on your last proposal and will try to contact him this afternoon." Later that day, Eskola called Ghreichi and said that Koehler accepted the offer on appellant's behalf. The same day, Eskola called the district court and sent an email to the district court's clerk indicating that "this case has settled and Ms. Ghreichi is going to draft the settlement documents." Ghreichi drafted

settlement documents and forwarded them to Eskola.  The settlement documents

conformed to the settlement proposal.

On July 17, 2015, Eskola emailed Ghreichi, saying "[W]e have a

misunderstanding, my client will only agree to continue the $1,300.00/month payments

even if your client sells the business . . . (instead of the 10 percent).  Until his death or

until the princip[al] amount is paid in full.  If this is a problem, please contact me."

Rapacz moved for enforcement of the settlement agreement.  Koehler submitted

an affidavit stating that he "misunderstood the terms of the proposed settlement as

explained to [him] by [his] counsel."  Koehler averred that he thought the payments

would continue even if Rapacz sold his practice.

After a hearing on September 22, 2015, the district court granted Rapacz's motion

to enforce the settlement agreement.  The district court determined that the emailed offer

was unambiguous, the email had been forwarded to Koehler, who was acting on

appellant's behalf, and appellant's attorney informed the court that the matter had been

settled.  The court reasoned, "Simply because [appellant] has changed her mind and no

longer likes the terms of the settlement, are not reasons to vacate a settlement."  This

appeal followed.

## DECISION

A settlement agreement is a contract.  *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578,

581-82 (Minn. 2010).  When contract terms are unambiguous, interpretation of a contract

is a question of law.  *Roemhildt v. Kristall Dev., Inc.*, 798 N.W.2d 371, 373 (Minn. App.

2011), *review denied* (Minn. July 19, 2011).  An unambiguous contract will be enforced

4

according to the language of the contract. *Dykes*, 781 N.W.2d at 582. "[District] courts have the inherent power to summarily enforce a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." *Voicestream Minneapolis, Inc. v. RPC Props., Inc.*, 743 N.W.2d 267, 272 (Minn. 2008) (quotation omitted).

Appellant argues that there was no meeting of the minds necessary to the formation of a contract because he was mistaken as to its terms. As with any contract, "there must be a definite offer and acceptance with a meeting of the minds on the essential terms of the agreement." *TNT Props., Ltd. v. Tri-Star Developers LLC*, 677 N.W.2d 94, 100-01 (Minn. App. 2004). But "[a] binding contract can exist despite the parties' failure to agree on a term if the term is not essential or can be supplied." *Id.* at 101. An agreement may be affirmed "despite some incompleteness and imperfection of expression," if the parties' intent can be discerned. *Id.* (quotation omitted).

The district court wrote, "The written offer is unambiguous and clearly lays out the loan outcome in the event the business is sold." The email setting forth the settlement terms included the amount and frequency of payments and the interest rate, and stated, "If the practice is sold during Dr. Rapacz's lifetime, those monthly payments would stop." The agreement also sets forth the terms of what happens after the practice is sold and in the event of Rapacz's death. These terms are definite enough to create a binding contract.

Appellant argues that her attorney lacked authority to enter into a binding settlement agreement. "An attorney may bind a client, at any stage of an action or proceeding, by agreement . . . made in writing and signed by such attorney." Minn. Stat.

§ 481.08 (2014). In order to do so, however, the attorney must have the client's express authority to enter into a settlement. *Schumann v. Northtown Ins. Agency, Inc.*, 452 N.W.2d 482, 483-84 (Minn. App. 1990). But a written expression of authority is not required; a client's grant of authority to settle can be expressed through conduct. *Rosenberg v. Townsend, Rosenberg & Young, Inc.*, 376 N.W.2d 434, 437 (Minn. App. 1985). For example, in *Rosenberg*, this court concluded that the following record evidence established the attorney's authority to settle his client's claim: (1) a letter from the opposing party confirming a settlement agreement reached during a telephone conversation; (2) the opposing party's oral representation to the court that the client's attorney had authority to settle; (3) a previous settlement agreement in the same amount; and (4) no immediate action by the client to repudiate the settlement. *Id.* And in *Schumann*, (1) the client's attorney sent the opposing party a letter accepting the settlement offer; (2) a copy of the letter was sent to the client; and (3) the letter indicated that the client's attorney had contacted the client and the client had authorized the settlement. 452 N.W.2d at 484.

Here, in an email exchange, Eskola stated that he "forwarded" Ghreichi's email containing the offer to Koehler. Three days later, Eskola said that he would contact Koehler because he had not heard from him. Eskola called Ghreichi on July 7 to say that Koehler had accepted the offer and subsequently called the district court to say that the case was settled. Ten days later, and three days after receiving the formal settlement documents, Eskola reported that Koehler said that he misunderstood the terms of the settlement. Although in his affidavit Koehler said, "I misunderstood the terms of the

6

proposed settlement as explained to me by my counsel," he does not deny receiving the forwarded email, or initially authorizing the settlement.

"Settlement of disputes without litigation is highly favored, and such settlements will not be lightly set aside by the courts. The party seeking to avoid a settlement has the burden of showing sufficient grounds for its vacation." *Johnson v. St. Paul Ins. Co.*, 305 N.W.2d 571, 573 (Minn. 1981) (citation omitted). The district court's decision on whether to vacate a settlement agreement will not be reversed absent an abuse of discretion. *Id.* Later dissatisfaction with the terms of a settlement agreement is not a sufficient basis for voiding the agreement. *See Schumann*, 452 N.W.2d at 485 ("A party who voluntarily enters into a settlement agreement cannot avoid the agreement upon determining . . . that the agreement has ultimately become disadvantageous or the settlement amount paltry."). The district court's decision to enforce the settlement agreement was not an abuse of discretion.

**Affirmed.**