*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0982**

Elizabeth Rocco, et al.,
Respondents,

vs.

Imran Khan, defendant and third party plaintiff,
Appellant,

vs.

Patrick J. Eastwood, et al., third party defendants,
Respondents.

**Filed February 13, 2017
Affirmed
Johnson, Judge**

Ramsey County District Court
File No. 62-CV-14-4207

Sean O. Skrypek, Kueppers, Kronschnabel & Skrypek, P.A., St. Paul, Minnesota (for respondents Rocco)

Todd C. Pearson, Pearson Law Office, Minnetonka, Minnesota (for appellant)

Robert Polski, Jr., St. Paul, Minnesota (for respondents Eastwood)

        Considered and decided by Reyes, Presiding Judge; Johnson, Judge; and Tracy M. Smith, Judge.

**JOHNSON**, Judge

After five hours of negotiation at a pre-trial settlement conference with the district court, the parties reached an agreement, which was placed on the record in open court. One party later refused to abide by the terms of the settlement agreement. The district court granted a motion to enforce the settlement agreement. We conclude that the settlement agreement does not lack an essential term and was intended to be final and binding when it was placed on the record. Therefore, we affirm.

**FACTS**

This appeal concerns two parcels of real property on Jefferson Avenue in St. Paul. The two parcels were divided by a north-south alley until 1982, when the city vacated the alley. At that time, there was common ownership of both parcels. There is some evidence that the owner intended to divide the vacated alley equally between the parcel on the west side and the parcel on the east side. In 2010, Elizabeth Rocco acquired an interest in the west parcel by a contract for deed, which described her parcel to include the "west 1/2 of [the] vacated alley," which is accessible to the street via a curb cut-out and driveway. Also in 2010, Imran Khan acquired an interest in the east parcel by way of a contract for deed, which described his parcel to include "all that part of the adjoining vacated alley," which also is accessible to the street via the same curb cut-out and driveway. He operates a day-care center on the site.

After the 2010 transactions, the documentation of the boundaries of the two parcels was confused, perhaps because the northern portion of the parcels is abstract property and

the southern portion of the parcels is Torrens property. A certificate of title reflected that, with respect to the southern portion of the parcels, all of the vacated alley was allocated to the east parcel, which is owned by Khan. In approximately 2012, Khan installed a fence on the west side of that portion of the vacated alley.

In June 2014, Rocco (along with the contract-for-deed vendors) commenced this action against Khan. She alleged claims of conversion and trespass. For relief, she requested a declaration that she owns the western half of the southern portion of the vacated alley, correction of the parties' certificates of title, the removal of the fence, and damages. Khan counter-claimed, alleging that he owned the entire width of the vacated alley. He requested reformation of the parties' deeds, an injunction prohibiting Rocco from entering his property, and damages. Khan also brought a third-party claim against the persons from whom he had acquired his interest in the east parcel.

On January 7, 2016, the three groups of parties and their respective attorneys participated in a settlement conference in the chambers of the assigned district court judge. All parties and their attorneys were present. The settlement conference began at approximately 9:00 a.m. The parties later reached a settlement agreement. The district court judge convened a hearing in the courtroom at approximately 2:00 p.m. so that the agreement could be placed on the record. Rocco's attorney and Khan's attorney were present in the courtroom. The attorney for Khan's predecessors-in-interest was not present in the courtroom because he had been excused by the district court judge with the consent of the other parties. Khan was not personally present in the courtroom, and it appears that no other party was present in the courtroom.

Khan's attorney recited the terms of the settlement agreement, as follows: Khan agreed to remove the fence on the southernmost portion of the vacated alley; Rocco agreed to move a shed; Rocco agreed to convey the western half of the northern portion of the vacated alley to Khan; Rocco and Khan agreed to convey to each other certain parts of southern portions of the vacated alley; the parties agreed to execute mutual easements allowing for common use of the southern portion of the vacated alley; the parties agreed that boundaries would be determined by a surveyor; Khan and his predecessor-in-interest agreed to make a payment of money to Rocco; and the parties agreed that all claims would be dismissed with prejudice. During his recitation of the terms of the agreement, Khan's attorney referred to a color-coded map of the property that was used by the parties in their negotiations. The district court asked clarifying questions and commended the parties and their counsel for the efforts to resolve the case.

After the settlement conference, the parties' attorneys exchanged multiple drafts of a written settlement agreement and the documents necessary to convey property interests, eventually coming to an agreement on the form of those documents. In early February 2016, the parties met with a surveyor at the property. While at the property, Khan voiced objections to the settlement agreement for the first time and refused to sign the written settlement agreement that had been agreed upon by the parties' respective attorneys.

In March 2016, Rocco moved to enforce the settlement agreement. Khan obtained substitute counsel and filed a memorandum in opposition to the motion, arguing that there was no binding agreement because the parties had agreed merely to a "framework" for a settlement, which depended on particular issues that would be determined by the surveyor.

4

Rocco submitted evidence in the form of affidavits with exhibits, including the final draft of the written settlement agreement, correspondence between counsel, and the map that was used during the settlement conference. Khan submitted evidence in the form of an affidavit with another copy of the final draft of the written settlement agreement. The district court conducted a hearing at which counsel presented oral arguments on the motion. Neither Rocco nor Khan introduced any additional evidence at the hearing or sought to call witnesses. The district court issued an order granting Rocco's motion to enforce the agreement. Khan appeals.

## D E C I S I O N

Khan argues that the district court erred by granting Rocco's motion to enforce the settlement agreement.

The supreme court has summarized the substantive and procedural law governing a motion to enforce a settlement agreement as follows:

> Settlement of claims is encouraged as a matter of public policy. *E.g.*, *Minneapolis Star & Tribune Co. v. Schumacher*, 392 N.W.2d 197, 205 (Minn. 1986). An agreement entered into as compromise and settlement of a dispute is contractual in nature. *Mr. Steak, Inc. v. Sandquist Steaks, Inc.*, 309 Minn. 408, 410, 245 N.W.2d 837, 838 (1976); *Jallen v. Agre*, 264 Minn. 369, 373, 119 N.W.2d 739, 743 (1963). As such, a settlement agreement "can be enforced by an ordinary action for breach of contract." *Mr. Steak*, 309 Minn. at 410, 245 N.W.2d at 838. Generally speaking, settlement agreements can also be enforced by motion in the original lawsuit. *Ryan v. Ryan*, 292 Minn. 52, 52-53, 193 N.W.2d 295, 296-97 (1971); *see Eliseuson v. Frayseth*, 290 Minn. 282, 288, 187 N.W.2d 685, 688 (1971) (concluding that the trial court has discretion to vacate a settlement through independent action or motion).

5

As a general rule, the enforcement of a settlement agreement requires a hearing if the issues are sharply conflicting and there are questions of fact for the fact finder to decide. 15A C.J.S. *Compromise and Settlement* §§ 70, 74 (2002). "Trial courts have[] 'the inherent power to summarily enforce a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous.'" *Lewis v. Benjamin Moore & Co.*, 574 N.W.2d 887, 888 (S.D. 1998) (emphasis omitted) (alteration in original) (quoting *Gatz v. Sw. Bank of Omaha*, 836 F.2d 1089, 1095 (8th Cir. 1988)). If material facts are disputed, an evidentiary hearing is required. *Id.*

*Voicestream Minneapolis, Inc. v. RPC Props., Inc.*, 743 N.W.2d 267, 271-72 (Minn. 2008).

If a district court grants a motion to enforce a settlement agreement, this court applies an abuse-of-discretion standard of review to the district court's decision. *Johnson v. St. Paul Ins. Co.*, 305 N.W.2d 571, 573-74 (Minn. 1981).

Khan argues that the district court erred for two reasons. First, he contends that "there was no meeting of the minds on all essential terms of a settlement agreement." Specifically, Khan contends that the settlement agreement is incomplete because it does not ensure that traffic flows safely in the day-care center's parking lot, which he considers an important safety issue. Because settlement agreements are contractual in nature, there must be a definite offer and an acceptance, resulting in a "meeting of the minds on the essential terms of the agreement." *TNT Props., Ltd. v. Tri-Star Developers LLC*, 677 N.W.2d 94, 100-01 (Minn. App. 2004). "A binding contract can exist despite the parties' failure to agree on a term if the term is not essential or can be supplied." *Id.* at 101 (citing Restatement (Second) of Contracts § 201, cmt. d (1981)).

6

The district court resolved this issue by stating, "There is no doubt in the court's mind that the parties reached a thorough and complete settlement of this case." The district court stated further that Khan "seeks to insert a different term than was negotiated because he has changed his mind or did not raise those issues at the settlement conference." The caselaw supports the district court's conclusion and undercuts Khan's argument that the terms he says are missing are "essential terms." In *TNT Properties*, this court stated that the essential terms of a settlement agreement concerning the conveyance of real property are consideration, the identification of the parties, the identification of the property to be conveyed, and the "general terms and conditions of the sale." 677 N.W.2d at 101. We concluded in that case that a settlement agreement was not incomplete on the ground that it did not clearly specify the timing of installment payments. *Id.* Likewise, in *Triple B & G, Inc. v. City of Fairmont*, 494 N.W.2d 49 (Minn. App. 1992), we concluded that a settlement agreement concerning real property did not lack an essential term on the ground that it did not contain any provisions concerning drainage. *Id.* at 53. For similar reasons, the district court in this case did not err by concluding that Khan's interest in an additional term concerning traffic flow in his parking lot was not part of the parties' settlement agreement and that the settlement agreement contained all essential terms.

Second, Khan contends that it was "understood that any final agreement would be embodied in a formal written document," which implies that there would be no binding agreement unless and until all parties signed a written settlement agreement. The caselaw recognizes a distinction between, on the one hand, "cases where 'there has been a mere reference to a future contract in writing'" and, on the other hand, "those [cases] where 'the

7

reduction of the agreement to writing and its signature has been made a condition precedent to its completion.'" *TNT Props.*, 677 N.W.2d at 100 (quoting *Massee v. Gibbs*, 169 Minn. 100, 103, 210 N.W. 872, 873 (1926)). The distinction depends on the parties' intent:

> If the written draft is viewed by the parties merely as a convenient memorial, or record of their previous contract, its absence does not affect the binding force of the contract; if, however, it is viewed as the consummation of the negotiation, there is no contract until the written draft is finally signed.

*Massee*, 169 Minn. at 103, 210 N.W. at 873.

When making a record of the settlement agreement, neither Khan's attorney nor Rocco's attorney expressed any intent that a final, binding agreement depended on the parties' execution of a written settlement agreement. The transcript indicates that the attorneys and the district court considered the settlement to be final and binding after its terms were recited in open court and the attorneys orally agreed to it. Khan's attorney stated that the parties would sign documents "as reasonably necessary" to effectuate the agreed-to reciprocal easements. This case is much like *TNT Properties*, in which we concluded that a party was bound by a settlement agreement to which the parties agreed in open court. 677 N.W.2d at 99-100. Thus, the parties' settlement agreement was final and binding even though it was not reduced to writing.

In sum, the district court did not err by granting Rocco's motion to enforce the settlement agreement.

**Affirmed.**

8